Slip Op. 20-168

## UNITED STATES COURT OF INTERNATIONAL TRADE

HYUNDAI STEEL COMPANY,

      Plaintiff,

and

SEAH STEEL CORPORATION,

      Consolidated Plaintiff,

v.

UNITED STATES,

      Defendant,

and

WHEATLAND TUBE COMPANY,

      Defendant-Intervenor.

Before: Jennifer Choe-Groves, Judge

Consol. Court No. 18-00154

## OPINION AND ORDER

[Sustaining in part and remanding in part the U.S. Department of Commerce's remand results following the 2015–2016 administrative review of the antidumping duty order on circular welded non-alloy steel pipe from the Republic of Korea.]

Dated: November 23, 2020

J. David Park, Henry D. Almond, Daniel R. Wilson, and Kang Woo Lee, Arnold & Porter Kaye Scholer LLP, of Washington, D.C., for Plaintiff Hyundai Steel Company.

Joshua E. Kurland, Trial Attorney, and L. Misha Preheim, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendant United States.  With them on the brief were Joseph H. Hunt, Assistant Attorney General, and Jeanne E. Davidson, Director.  Of counsel on the brief was Elio Gonzalez, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce.

Roger B. Schagrin and Paul W. Jameson, Schagrin Associates, of Washington, D.C., for
Defendant-Intervenor Wheatland Tube Company.

        Choe-Groves, Judge:  Plaintiff Hyundai Steel Company ("Hyundai Steel") and

Consolidated Plaintiff SeAH Steel Corporation ("SeAH") challenge the final determination in

the 2015–2016 administrative review of the antidumping duty order covering circular welded

non-alloy steel pipe ("CWP") from the Republic of Korea ("Korea").  Circular Welded Non-

Alloy Steel Pipe From the Republic of Korea ("Final Results"), 83 Fed. Reg. 27,541 (Dep't

Commerce June 13, 2018) (final results of antidumping duty administrative review; 2015–2016),

ECF No. 22; see also Issues and Decision Mem. for the Final Results of Antidumping Duty

Admin. Review of Circular Welded Non-Alloy Steel Pipe from the Republic of Korea; 2015–

2016 (Dep't Commerce June 7, 2018), ECF No. 22, PD 314 ("Final IDM").[1]  Before the court

are the Final Results of Redetermination Pursuant to Court Remand ("Remand Results"), ECF

No. 73-1, which the court ordered in Hyundai Steel Co. v. United States ("Hyundai Steel I"), 43

CIT __, 415 F. Supp. 3d 1293 (2019).

        Hyundai Steel argues that the U.S. Department of Commerce ("Commerce") failed to

comply with the court's remand instructions when Commerce re-evaluated the record and

repeated its particular market situation determination in the Remand Results.  Pl. [Hyundai

Steel]'s Comments Opp'n Remand Redetermination ("Hyundai Cmts.") 2, ECF No. 75.

Hyundai Steel contends that Commerce's determination that a particular market situation existed

as to costs of production was not authorized by statute without a threshold determination that the

costs were outside the ordinary course of trade based on a comparison to the reported costs.  Id.

at 4–5.  Hyundai Steel also faults the particular market situation determination as unsupported by

_____

[1] Citations to the administrative record reflect the public record ("PD") document numbers.

the record.  Id. at 7–22.  Hyundai Steel argues that a cost-based adjustment for purposes of the

sales-below-cost test is contrary to law.  Id. at 27–29.  SeAH did not file comments.

For the following reasons, the court sustains in part and remands in part the Remand

Results.

## BACKGROUND

The court presumes familiarity with the facts and procedural history of this case and

recites the facts relevant to the court's review of the Remand Results.  Hyundai Steel I, 43 CIT at

__, 415 F. Supp. 3d at 1295–1301.  In the Final Results, Commerce determined that a particular

market situation in Korea distorted the cost of production of CWP based on the cumulative

impact of four factors: (1) Korean subsidies of hot-rolled steel coil; (2) Korean imports of hot-

rolled steel coil from China; (3) strategic alliances between Korean hot-rolled steel coil

producers and CWP producers; and (4) distortions in the Korean electricity market.  Final IDM

23.  Commerce applied an upward adjustment to the cost of production based on the subsidy rate

of hot-rolled steel coil.  Id. (citing Countervailing Duty Investigation of Certain Hot-Rolled Steel

Flat Products From the Republic of Korea, 81 Fed. Reg. 53,439 (Dep't Commerce Aug. 12,

2016) (final affirmative determination), as amended, 81 Fed. Reg. 67,960 (Dep't Commerce Oct.

3, 2016)).  Commerce conducted a sales-below-cost test and disregarded certain sales made at

prices below the cost of production.  See Decision Mem. for the Prelim. Results of Antidumping

Duty Admin. Review: Circular Welded Non-Alloy Steel Pipe from the Republic of Korea: 2015–

2016 ("Prelim. DM") 19–20, PD 275 (Dec. 1, 2017); Final IDM 3 (noting that Commerce used

the same calculation methodology for the Final Results as explained in the Prelim. DM).

Commerce calculated normal value from the remaining above-cost home market sales for

mandatory respondents Hyundai Steel and Husteel.  Prelim. DM 20.  Commerce also calculated

a combined assessment rate for Hyundai Steel's importers.  Final IDM 29.  In <u>Hyundai Steel I</u>,

the court concluded that the particular market situation determination was unsupported by

substantial evidence because Commerce relied only on record documents submitted previously

in the administrative review of oil country tubular goods from the Republic of Korea for the

2014–2015 period of review, which the court determined in <u>NEXTEEL Co. v. United States</u>, 43

CIT __, __, 392 F. Supp. 3d 1276, 1287–88 (2019), were insufficient to support Commerce's

particular market situation determination in that administrative review.  <u>Hyundai Steel I</u>, 415 F.

Supp. 3d at 1301.

> Commerce conducted a new review of the record on remand and determined that a

particular market situation distorted the cost of hot-rolled steel coil in the Korean market.

<u>Remand Results</u> 4–5.  In addition to the four factors Commerce considered previously,

Commerce added a fifth factor to its particular market situation analysis, namely steel industry

restructuring efforts by the Korean Government.  <u>Id.</u> at 6, 7–15.  Commerce adjusted the cost of

hot-rolled steel coil based on the subsidy rate in <u>POSCO v. United States</u>, 43 CIT  __, 378 F.

Supp. 3d 1348 (2019), for purposes of the sales-below-cost test.  <u>See</u> <u>Remand Results</u> 4, 29–30.

Commerce assigned importer-specific assessment rates to Hyundai Steel's importers, based on

Commerce's redetermination that the record failed to establish potential manipulation.  <u>Id.</u> at 15.

## JURISDICTION AND STANDARD OF REVIEW

> The court has jurisdiction pursuant to 19 U.S.C. § 1516a(a)(2)(B)(iii) and 28 U.S.C.

§ 1581(c), which grant the court authority to review actions contesting the final results of an

administrative review of an antidumping duty order.  The court will uphold Commerce's

determinations unless they are unsupported by substantial record evidence, or otherwise not in

accordance with the law.  19 U.S.C. § 1516a(b)(1)(B)(i).  The court also reviews determinations

made on remand for compliance with the court's remand order.  <u>Ad Hoc Shrimp Trade Action</u>

<u>Comm. v. United States</u>, 38 CIT __, __, 992 F. Supp. 2d 1285, 1290 (2014), <u>aff'd</u>, 802 F.3d 1339

(Fed. Cir. 2015).

## DISCUSSION

### I.   Particular Market Situation

#### A.   Waiver

Hyundai Steel argued for the first time on remand that Commerce's determination

contravened the statute by adjusting the cost of production for purposes of the sales-below-cost

test.  <u>Remand Results</u> 24.  Commerce declined to respond to Hyundai Steel's allegation,

asserting that a response was unwarranted because Hyundai Steel did not raise the argument

prior to remand and Commerce was not required by the court in <u>Hyundai Steel I</u> to address this

legal argument.  <u>Id.</u> at 39.  Hyundai Steel raises this argument for the first time before this court.

Hyundai Cmts. 27–29.  Defendant United States ("Defendant") contends that Hyundai Steel

waived the argument by failing to raise it in its opening or reply briefs prior to remand.  Def.'s

Resp. Pl.'s Comments Regarding Remand Redetermination ("Def. Resp.") 30, 31, ECF No. 78.

Generally, "arguments not raised in the opening brief are waived."  <u>SmithKline Beecham</u>

<u>Corp. v. Apotex Corp.</u>, 439 F.3d 1312, 1319 (Fed. Cir. 2006) (citation omitted).  Courts may

exercise discretion to depart from the general rule, however, on a case-by-case basis.  <u>Singleton</u>

<u>v. Wulff</u>, 428 U.S. 106, 121 (1976); <u>Icon Health & Fitness, Inc. v. Strava, Inc.</u>, 849 F.3d 1034,

1040 (Fed. Cir. 2017).  The U.S. Court of Appeals for the Federal Circuit has recognized that

consideration of an argument raised for the first time on appeal is appropriate "when there is a

change in the jurisprudence of the reviewing court . . . after consideration of the case by the

lower court[.]"  <u>Golden Bridge Tech., Inc. v. Nokia, Inc.</u>, 527 F.3d 1318, 1323 (Fed. Cir. 2008)

(internal quotation marks and citation omitted).  "[A]pellate courts may [also] apply the correct

law even if the parties did not argue it below[.]"  Id. (internal quotation marks and citation

omitted).

　　　Here, departure from the general rule of waiver is warranted for both reasons.  While

there has not been an opinion from the U.S. Court of Appeals for the Federal Circuit on whether

cost-based particular market situation determinations and subsequent adjustments are in

accordance with the law, the jurisprudence of this Court was clarified after the court remanded

the Final Results to Commerce in Hyundai Steel I on December 13, 2019, before Hyundai Steel

filed its comments in opposition to the Remand Results on April 13, 2020.  See Order, ECF No.

65; Hyundai Cmts.  The Court of International Trade issued Saha Thai Steel Pipe Pub. Co. v.

United States, 43 CIT __, 422 F. Supp. 3d 1363 (2019), on December 18, 2019; Husteel Co. v.

United States, 44 CIT __, 426 F. Supp. 3d 1376 (2020), on January 3, 2020; and Borusan

Mannesmann Boru Sanayi Ve Ticaret A.Ş. v. United States ("Borusan"), 44 CIT __, 426 F.

Supp. 3d 1395 (2020), on January 7, 2020.  The Court addressed the lawfulness of the cost-based

particular market situation analysis and adjustment for the first time in Saha Thai Steel Pipe Pub.

Co., 43 CIT at __, 422 F. Supp. 3d at 1368–70.  The Court concluded consistently in all three

opinions that the statute does not authorize a cost-based particular market situation analysis or

adjustment for purposes of the sales-below-cost test.  Id.; Husteel Co., 44 CIT at __, 426 F. Supp.

3d at 1383–89; Borusan, 44 CIT at __, 426 F. Supp. 3d at 1411–12.

　　　In addition, this court has discretion to consider the issue in order to apply the correct

law.  The cost-based particular market situation issue is strictly a legal question of statutory

interpretation as to whether the statute permits the actions taken by Commerce.  The court may

consider the cost-based particular market situation issue to clarify the meaning of the statute and

apply it to Commerce's actions irrespective of whether Hyundai Steel raised the argument in its opening brief.  The court exercises discretion to consider whether Commerce's particular market situation determination and adjustment are in accordance with the law.

### B.        Governing Law

Commerce determines antidumping duties by calculating the amount by which the normal value of subject merchandise exceeds the export price or the constructed export price for the merchandise.  19 U.S.C. § 1673.  When reviewing antidumping duties in an administrative review, Commerce must determine: (1) the normal value and export price or constructed export price of each entry of the subject merchandise, and (2) the dumping margin for each such entry. Id. § 1675(a)(1)(B), (a)(2)(A).  The statute dictates the steps by which Commerce may calculate normal value "to achieve a fair comparison" with export price or constructed export price.  Id. § 1677b(a).

First, the statute specifies the methodology for Commerce to determine which sales should be considered and disregarded in calculating normal value.  Normal value is "the price at which the foreign like product is first sold . . . in the exporting country . . . in the ordinary course of trade."  Id. § 1677b(a)(1)(B)(i).  Sales outside the ordinary course of trade are excluded from normal value.  "Ordinary course of trade" is defined in Section 1677(15) as excluding: (1) sales made at less than the cost of production, and (2) sales that cannot be compared properly with the export price or constructed export price due to a particular market situation.  Id. § 1677(15)(A), (C).  To determine whether "sales . . . have been made at prices that represent less than the cost of production," the statute directs Commerce to conduct the sales-below-cost test.  Id. § 1677b(b)(1).  The cost of production is defined by statute to include the cost of materials and processing, amounts for selling, general, and administrative expenses, and the cost of all

containers and expenses incidental for shipment.  Id. § 1677b(b)(3).  Sales that Commerce

determines, by application of the sales-below-cost test, were made at prices below the cost of

production or that Commerce determines were made in a particular market situation, are outside

the ordinary course of trade and are disregarded from the calculation of normal value.  See id.

§ 1677b(b)(1), (a)(1)(B)(i).  "Whenever such sales are disregarded, normal value shall be based

on the remaining sales of the foreign like product in the ordinary course of trade."  See id.

§§ 1677b(a)(1)(B)(i), (b)(1); 1677(15)(A), (C).

       Second, when using market prices to determine normal value, Commerce may make

certain adjustments to the remaining home market prices.  The statute lists authorized

adjustments for incidental shipping, delivery expenses, and direct taxes, and for differences

between the subject merchandise and foreign like products in quantity, circumstances of sale, or

level of trade.  Id. § 1677b(a)(6), (7).

       Third, when using home market sales for normal value, if Commerce cannot determine

the normal value of the subject merchandise based on home market sales, then Commerce may

use qualifying third-country sales or a constructed value as a basis for normal value.  Id.

§ 1677b(a)(4), (a)(1)(B)(ii), (b)(1).  Constructed value represents: (1) the cost of materials and

fabrication or other processing of any kind used in producing the merchandise; (2) the actual

amounts incurred and realized for selling, general, and administrative expenses, and for profits,

in connection with the production and sales of a foreign like product, in the ordinary course of

trade, for consumption in the foreign country; and (3) the cost of packing the subject

merchandise.  Id. § 1677b(e).  When calculating constructed value, if Commerce determines that

a particular market situation exists "such that the cost of materials and fabrication or other

processing of any kind does not accurately reflect the cost of production in the ordinary course of

trade, [then] [Commerce] may use . . . any other calculation methodology." Id.

>       **C.**       **Adjustment to the Cost of Production for the Sales-Below-Cost Test**

For purposes of determining whether sales were made at less than cost, on remand

Commerce adjusted the reported costs of production of hot-rolled steel coil, a primary CWP

input, based on Commerce's determination that a particular market situation in Korea continued

to distort the cost of hot-rolled steel coil. See Remand Results 4; see also Prelim. DM 19–20;

Final IDM 3. Commerce cited Section 1677b(e) for the authority to adjust the cost of hot-rolled

steel coil as an alternative calculation methodology after determining that a particular market

situation existed as to the cost of production. Remand Results 4–5; see also Def. Resp. 7, 8.

Hyundai Steel counters that a particular market situation adjustment for purposes of the sales-

below-cost test is not permitted by the applicable statute. Hyundai Cmts. 27. As this Court has

held repeatedly, the statute does not authorize an adjustment to the cost of production when

Commerce applies the sales-below-cost test to determine which home market sales to exclude

from the calculation of normal value. See Saha Thai Steel Pipe Pub. Co., 43 CIT at __, 422 F.

Supp. 3d at 1368–70; Husteel Co., 44 CIT at __, 426 F. Supp. 3d at 1383–89; Borusan, 44 CIT at

__, 426 F. Supp. 3d at 1411–12; Dong-A Steel Co. v. United States, 44 CIT __, __, Slip Op. 20-

139, at *29–35 (Sept. 29, 2020); Husteel Co. v. United States, 44 CIT __, __, Slip Op. 20-147, at

*9–14 (Oct. 19, 2020); Saha Thai Steel Pipe Pub. Co. v. United States, 44 CIT __, __, Slip Op.

20-148, at *7–12 (Oct. 19, 2020).

Commerce cited Section 1677b(e) for the authority to adjust the cost of production for the

sales-below-cost test as an alternative calculation methodology, but did not address Hyundai

Steel's comments contesting Commerce's authority to make the adjustment. Remand Results 5;

see id. at 24, 39.  The court remands for Commerce to explain its position regarding the statutory

authority to adjust the cost of production for purposes of the sales-below-cost test of Section

1677b(b).  Commerce should address how its statutory interpretation and reasoning comply with

the opinions of the Court of International Trade in the cases listed above.

### D.       Particular Market Situation Determination

In Hyundai Steel I, the court concluded that Commerce's determination of a particular

market situation was unsupported by substantial evidence.  43 CIT at __, 415 F. Supp. 3d at

1301.  Commerce asserts that it reconsidered "the totality" of the record on remand and, upon

adding the fifth factor of steel industry restructuring, determined that the existence of a particular

market situation was supported by the record.  Remand Results 6–7.  Hyundai Steel counters that

because Commerce neither reopened the record, nor gathered additional facts on remand,

Commerce did not fill the "evidentiary void" identified by the court in Hyundai Steel I.  Hyundai

Cmts. 2 (quoting Hyundai Steel I, 43 CIT at __, 415 F. Supp. 3d at 1301).  Defendant responds

that on remand "Commerce examined . . . the record, including documents and information on

which it did not previously rely, to re-evaluate, further explain, and support its findings."  Def.

Resp. 5.

Commerce based its remand particular market situation determination on distortions in

the cost of hot-rolled steel coil, a primary CWP input.  Remand Results 6–7.  Commerce

explained:

> Section 504 of the Trade Preferences Extension Act (TPEA) added the concept of
> a [particular market situation] in the definition of the term "ordinary course of
> trade," for purposes of constructed value under section [1677b(e)], and through
> these provisions for purposes of the [cost of production] under section
> [1677b(b)(3)].  Section 773(e) of the TPEA states that "if a particular market
> situation exists such that the cost of materials and fabrication or other processing
> of any kind does not accurately reflect the cost of production in the ordinary course
> of trade, the administering authority may use another calculation methodology

> under this subtitle or any other calculation methodology." Thus, under section 504
> of the TPEA, Congress has given Commerce the authority to determine whether a
> [particular market situation] exists within the foreign market from which the subject
> merchandise is sourced and to determine whether the cost of materials, fabrication,
> or processing of such merchandise fail to accurately reflect the [cost of production]
> in the ordinary course of trade.

Id. at 5.  Commerce made the particular market situation determination under Section 1677b(e)

by asserting that Section 1677b(e)'s reference to "ordinary course of trade" incorporates Section

1677b(e) into the cost of production calculation in Section 1677b(b)(3).

The court remands for Commerce to explain its position regarding the statutory authority

to conduct a particular market situation analysis based on alleged distortions to the cost of

production when Commerce is not calculating constructed value.  Commerce should address

how its statutory interpretation and reasoning comply with the opinions of the Court of

International Trade in the cases listed above.

## II.    Affiliated Importer Rates

The court remanded Commerce's calculation of a combined assessment rate for Hyundai

Steel's affiliated importers, Hyundai Steel USA and Hyundai Corporation USA.  Hyundai Steel

I, 43 CIT at __, 415 F. Supp. 3d at 1302–03.  Commerce assigned individually-assessed rates for

Hyundai Steel's affiliated importers on remand.  No parties opposed.  See Hyundai Cmts.; Def.-

Intervenor's Comments Supp. Remand Redetermination, ECF No. 77.

Pursuant to 19 C.F.R. § 351.212(b)(1), Commerce "normally will calculate an assessment

rate for each importer of subject merchandise covered by the review."  19 C.F.R.

§ 351.212(b)(1); Antidumping Proceedings: Calculation of the Weighted-Average Dumping

Margin and Assessment Rate in Certain Antidumping Duty Proceedings; Final Modification, 77

Fed. Reg. 8101, 8103 (Dep't Commerce Feb. 14, 2012).  Notwithstanding Commerce's regular

practice of calculating an assessment rate for each importer consistent with 19 C.F.R.

§ 351.212(b)(1), Commerce calculated a combined assessment rate in the <u>Final Results</u> for two

of Hyundai Steel's affiliated importers.  Final IDM 29.  Commerce cited its practice of

calculating a combined assessment rate when two or more importers are affiliated with one

another and a foreign exporter to prevent affiliated importers from manipulating individual

assessment rates.  <u>Id.</u>; Def. Resp. 38–39.  The court found that Defendant failed to establish that

Commerce's practice of calculating combined assessment rates for affiliated importers extended

to cases in which the record did not reflect a potential for manipulation.  <u>Hyundai Steel I</u>, 43 CIT

at __, 415 F. Supp. 3d at 1302.  The court noted that Defendant failed to explain how such a

practice would be reasonable in light of 19 C.F.R. § 351.212(b)(1).  <u>Id.</u> at 1302–03.

Commerce determined on remand that nothing in the record indicated a potential for

manipulation, and thus calculated importer-specific rates for Hyundai Steel's affiliated importers.

<u>Remand Results</u> 15.  The court concludes that Commerce's decision to reverse its combined

assessment rate and assign importer-specific rates is reasonable in the absence of evidence of

potential manipulation and complies with the court's order in <u>Hyundai Steel I</u>.

## CONCLUSION

The court remands Commerce's cost-based particular market situation determination and

subsequent adjustment for further explanation consistent with this opinion.  The court sustains

Commerce's determination to assign importer-specific assessment rates to Hyundai Steel's

affiliated importers.

Accordingly, it is hereby

**ORDERED** that the <u>Remand Results</u> are remanded for Commerce to explain the

statutory authority to conduct a cost-based particular market situation analysis when normal

value is based on home market sales and to adjust the cost of production for purposes of the

Consol. Court No. 18-00154                                                     Page 13

sales-below-cost test of 19 U.S.C. § 1677b(b), specifically within the context of relevant caselaw

from the Court of International Trade; and it is further

      **ORDERED** that this case will proceed according to the following schedule:

         (1) Commerce must file the second remand redetermination on or before January

            15, 2021;

         (2) Commerce must file the administrative record on or before January 29, 2021;

         (3) Comments in opposition to the second remand redetermination must be filed

            on or before February 26, 2021;

         (4) Comments in support of the second remand redetermination must be filed on

            or before March 26, 2021; and

         (5) The joint appendix must be filed on or before April 9, 2021.


                                               /s/ Jennifer Choe-Groves
                                    Jennifer Choe-Groves, Judge

Dated:   November 23, 2020
       New York, New York