Slip Op. 21-88

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **HYUNDAI STEEL COMPANY,** | |
| Plaintiff, | |
| and | |
| **SEAH STEEL CORPORATION,** | |
| Consolidated Plaintiff, | Before: Jennifer Choe-Groves, Judge |
| v. | Consol. Court No. 18-00154 |
| **UNITED STATES,** | |
| Defendant, | |
| and | |
| **WHEATLAND TUBE COMPANY,** | |
| Defendant-Intervenor. | |

### OPINION AND ORDER

[Remanding the second remand results by the U.S. Department of Commerce following the 2015–2016 administrative review of the antidumping duty order on circular welded non-alloy steel pipe from the Republic of Korea.]

Dated: July 19, 2021

J. David Park, Henry D. Almond, Daniel R. Wilson, and Kang Woo Lee, Arnold & Porter Kaye Scholer LLP, of Washington, D.C., for Plaintiff Hyundai Steel Company.

Jeffrey M. Winton and Amrietha Nellan, Winton & Chapman PLLC, of Washington, D.C., for Consolidated Plaintiff and Plaintiff-Intervenor SeAH Steel Corporation.

Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendant United States.  With her on the brief were Brian M. Boynton, Acting Assistant Attorney General, and Jeanne E. Davidson, Director.  Of counsel on the brief was Elio Gonzalez, Senior Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce.

Roger B. Schagrin, Schagrin Associates, of Washington, D.C., for Defendant-Intervenor Wheatland Tube Company.

Choe-Groves, Judge:  Plaintiff Hyundai Steel Company ("Hyundai Steel") and Consolidated Plaintiff SeAH Steel Corporation ("SeAH"), (collectively, "Plaintiffs"), challenge the final determination in the 2015–2016 administrative review of the antidumping duty order covering circular welded non-alloy steel pipe ("CWP") from the Republic of Korea ("Korea").  Circular Welded Non-Alloy Steel Pipe from the Republic of Korea ("Final Results"), 83 Fed. Reg. 27,541 (Dep't Commerce June 13, 2018) (final results of antidumping duty administrative review; 2015–2016); see also Issues and Decision Mem. for the Final Results of Antidumping Duty Admin. Review of Circular Welded Non-Alloy Steel Pipe from the Republic of Korea; 2015–2016 (Dep't Commerce June 7, 2018), ECF No. 51-22, PD 314 ("Final IDM").[1]

Before the court are the Final Results of Redetermination Pursuant to Court

---

[1] Citations to the administrative record reflect the public record ("PD") document numbers.

Remand, ECF No. 85-1 ("Second Remand Results"), which the court ordered in Hyundai Steel Co. v. United States ("Hyundai Steel II"), 44 CIT __, 483 F. Supp. 3d 1273 (2020). Because the Second Remand Results explained the basis for the remand particular market situation adjustment and determination by the U.S. Department of Commerce ("Commerce"), the court reviews both the Final Results of Redetermination Pursuant to Court Remand, ECF No. 73-1 ("Remand Results"), and the Second Remand Results in this opinion. Plaintiffs argue that Commerce failed to comply with the court's remand instructions when Commerce repeated and explained its particular market situation determination and adjustment in the Second Remand Results. Pl. [Hyundai Steel]'s Comments Opp'n Second Remand Redetermination at 1–2, ECF No. 89 ("Hyundai Cmts."); Comments [SeAH] Commerce's Feb. 2, 2021, Redetermination at 2, ECF No. 88 ("SeAH Cmts."). Hyundai Steel argues that Commerce's particular market situation determination is not in accordance with the law and that the "underlying [particular market situation] determination and consequent calculations still remain unsupported by substantial record evidence and contrary to law." Hyundai Cmts. at 2–3. Hyundai Steel reiterates its contention that Commerce's particular market situation determination and subsequent adjustment to the cost of production are not authorized by statute. Id. at 3–12. Defendant United States ("Defendant") argues that Commerce complied with the court's remand order and made its particular

market situation determination and adjustment in accordance with the law. Def.'s Resp. Comments Regarding Second Remand Redetermination at 6–9, ECF No. 90 ("Def. Cmts."). Defendant-Intervenor Wheatland Tube Company did not file comments.

For the following reasons, the court remands the Second Remand Results.

## ISSUES PRESENTED

The court reviews the following issues:

1. Whether Commerce's particular market situation adjustment to the cost of production when conducting a sales-below-cost test is in accordance with the law; and

2. Whether Commerce's particular market situation determination is in accordance with the law.

## BACKGROUND

The court presumes familiarity with the facts and procedural history of this case and recites the facts relevant to the court's review of the Second Remand Results. See Hyundai Steel II, 44 CIT at __, 483 F. Supp. 3d at 1275–77; see also Hyundai Steel Co. v. United States ("Hyundai Steel I"), 43 CIT __, __, 415 F. Supp. 3d 1293, 1295–1301 (2019).

In the Final Results, Commerce determined that a particular market situation in Korea distorted the cost of production of CWP. Final IDM at 3. Commerce

applied an upward adjustment to the cost of production of CWP based on the subsidy rate of hot-rolled steel coil.  Id. (citing Countervailing Duty Investigation of Certain Hot-Rolled Steel Flat Products from the Republic of Korea, 81 Fed. Reg. 53,439 (Dep't Commerce Aug. 12, 2016) (final affirmative determination), as amended, 81 Fed. Reg. 67,960 (Dep't Commerce Oct. 3, 2016)).  Commerce conducted a sales-below-cost test and disregarded certain sales made at prices below the cost of production.  See Decision Mem. for the Prelim. Results of Antidumping Duty Admin. Review: Circular Welded Non-Alloy Steel Pipe from the Republic of Korea: 2015–2016 at 19–20, PD 275 ("Prelim. DM"); Final IDM at 3 (noting that Commerce used the same calculation methodology for the Final Results as explained in the Prelim. DM).  Commerce calculated normal value from the remaining above-cost home market sales for mandatory respondents Hyundai Steel and Husteel Steel Company.  Prelim. DM at 15, 19–20; Final IDM at 3.

In Hyundai Steel I, the court concluded that Commerce's particular market situation determination was unsupported by substantial evidence.  Hyundai Steel I, 43 CIT at __, 415 F. Supp. 3d at 1301.  In the Remand Results, Commerce conducted a new review of the record and determined again that a particular market situation distorted the cost of hot-rolled steel coil in the Korean market.  Remand Results at 4–5.  Commerce made an upward adjustment to the cost of hot-rolled steel coil, performed the sales-below cost test, and calculated normal value

from the remaining above-cost home market sales.  See id. at 4 n.22.

      Hyundai Steel argued for the first time on remand that Commerce's particular market situation determination and subsequent upward adjustment to the cost of production for the sales-below-cost test contravened the statute.  Hyundai Steel II, 44 CIT at __, 483 F. Supp. 3d at 1276–77; see also Remand Results at 24, 39.  Commerce asserted that it was not required to address those legal arguments and Defendant argued that Hyundai Steel waived the arguments.  Hyundai Steel II, 44 CIT at __, 483 F. Supp. 3d at 1276–77.  The court concluded that departure from the general rule of waiver was warranted and remanded for Commerce to explain the statutory authority to conduct a cost-based particular market situation analysis when normal value is based on home market sales and to adjust the cost of production for purposes of the sales-below-cost test of 19 U.S.C. § 1677b(b), specifically within the context of relevant caselaw from this Court.  Hyundai Steel II, 44 CIT at __, 483 F. Supp. 3d at 1276–77, 1281.

      Commerce explained on second remand its view that Section 504 of the Trade Preferences Extension Act of 2015 ("TPEA"), Pub. L. No. 114-27, § 504, 129 Stat. 362, 385, authorizes Commerce to make particular market situation determinations and adjust the cost of production for the sales-below-cost test when calculating normal value based on home market sales.  Second Remand Results at 3.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 19 U.S.C. § 1516a(a)(2)(B)(iii) and 28 U.S.C. § 1581(c), which grant the court authority to review actions contesting the final results of an administrative review of an antidumping duty order. The court will uphold Commerce's determinations unless they are unsupported by substantial record evidence, or otherwise not in accordance with the law. 19 U.S.C. § 1516a(b)(1)(B)(i). The court also reviews determinations made on remand for compliance with the court's remand order. Ad Hoc Shrimp Trade Action Comm. v. United States, 38 CIT __, __, 992 F. Supp. 2d 1285, 1290 (2014), aff'd, 802 F.3d 1339 (Fed. Cir. 2015).

## DISCUSSION

### I. Governing Law

Commerce determines antidumping duties by calculating the amount by which the normal value of subject merchandise exceeds the export price or the constructed export price for the merchandise. 19 U.S.C. § 1673. When reviewing antidumping duties in an administrative review, Commerce must determine: (1) the normal value and export price or constructed export price of each entry of the subject merchandise, and (2) the dumping margin for each such entry. Id. § 1675(a)(1)(B), (a)(2)(A). The statute dictates the steps by which Commerce may calculate normal value "to achieve a fair comparison" with export price or

constructed export price. Id. § 1677b(a).

First, the statute specifies the methodology for Commerce to determine which sales should be considered and disregarded in calculating normal value. Normal value is "the price at which the foreign like product is first sold . . . in the exporting country . . . in the ordinary course of trade." Id. § 1677b(a)(1)(B)(i). Sales outside the ordinary course of trade are excluded from normal value. "Ordinary course of trade" is defined in Section 1677(15) as excluding: (1) sales made at less than the cost of production, and (2) sales that cannot be compared properly with the export price or constructed export price due to a particular market situation. Id. § 1677(15)(A), (C). To determine whether "sales . . . have been made at prices that represent less than the cost of production," the statute directs Commerce to conduct the sales-below-cost test. Id. § 1677b(b)(1). The cost of production is defined by statute to include the cost of materials and processing, amounts for selling, general, and administrative expenses, and the cost of all containers and expenses incidental for shipment. Id. § 1677b(b)(3). Sales that Commerce determines, by application of the sales-below-cost test, were made at prices below the cost of production or that Commerce determines were made in a particular market situation, are outside the ordinary course of trade and are disregarded from the calculation of normal value. See id. § 1677b(b)(1), (a)(1)(B)(i). "Whenever such sales are disregarded, normal value shall be based on

the remaining sales of the foreign like product in the ordinary course of trade." See id. §§ 1677b(a)(1)(B)(i), (b)(1); 1677(15)(A), (C).

Second, when using market prices to determine normal value, Commerce may make certain adjustments to the remaining home market prices. The statute lists authorized adjustments for incidental shipping, delivery expenses, and direct taxes, and for differences between the subject merchandise and foreign like products in quantity, circumstances of sale, or level of trade. Id. § 1677b(a)(6), (7).

Third, when using home market sales for normal value, if Commerce cannot determine the normal value of the subject merchandise based on home market sales, then Commerce may use qualifying third-country sales or a constructed value as a basis for normal value. Id. § 1677b(a)(4), (a)(1)(B)(ii), (b)(1). Constructed value represents: (1) the cost of materials and fabrication or other processing of any kind used in producing the merchandise; (2) the actual amounts incurred and realized for selling, general, and administrative expenses, and for profits, in connection with the production and sales of a foreign like product, in the ordinary course of trade, for consumption in the foreign country; and (3) the cost of packing the subject merchandise. Id. § 1677b(e). When calculating constructed value, if Commerce determines that a particular market situation exists "such that the cost of materials and fabrication or other processing of any kind does not

accurately reflect the cost of production in the ordinary course of trade, [then] [Commerce] may use . . . any other calculation methodology." Id.

## II. Particular Market Situation Adjustment to the Cost of Production for the Sales-Below-Cost Test

For purposes of determining whether sales were made at less than cost, Commerce adjusted the reported costs of production of hot-rolled steel coil, a primary CWP input, based on its determination that a particular market situation in Korea distorted the cost of hot-rolled steel coil. See Remand Results at 4; see also Second Remand Results at 3. Defendant argues that Commerce complied with the court's order to explain Commerce's statutory authority and that Commerce's particular market situation adjustment was in accordance with the law. Def. Cmts. at 6, 9. Plaintiffs oppose the Second Remand Results and argue that Commerce did not comply with the court's order. Hyundai Cmts. at 1; SeAH Cmts. at 2. Hyundai Steel maintains that Commerce's particular market situation adjustment calculation was unsupported by substantial evidence and not in accordance with the law. Hyundai Cmt. at 2. Hyundai Steel argues that Commerce's interpretation of the statute relied on critical omissions, was inconsistent with caselaw, and relied inappropriately on legislative history. Hyundai Cmts. at 3–12.

As this Court has held repeatedly, the statute does not authorize a particular market situation adjustment to the cost of production when Commerce applies the

sales-below-cost test to determine which home market sales to exclude from the calculation of normal value. See Saha Thai Steel Pipe Pub. Co. v. United States, 43 CIT __, __, 422 F. Supp. 3d 1363, 1368–70 (2019); Husteel Co. v. United States, 44 CIT __, __, 426 F. Supp. 3d 1376, 1383–89 (2020); Borusan Mannesmann Boru Sanayi Ve Ticaret A.Ş. v. United States, 44 CIT __, __, 426 F. Supp. 3d 1395, 1411–12 (2020); Dong-A Steel Co. v. United States, 44 CIT __, __, 475 F. Supp. 3d 1317, 1337–41 (2020); Husteel Co. v. United States, 44 CIT __, __, 476 F. Supp. 3d 1363, 1370–73 (2020); Saha Thai Steel Pipe Pub. Co. v. United States, 44 CIT __, __, 476 F. Supp. 3d 1378, 1382–86 (2020).

Commerce applied an adjustment to the cost of production calculation set forth in Section 1677b(b)(3) for purposes of the sales-below-cost test pursuant to Section 1677b(b)(1). See Remand Results at 4; Second Remand Results at 2. Commerce relied mistakenly on Section 504 of the TPEA for the authority to adjust the cost of production for the sales-below-cost test. Commerce explained that:

> [W]here a [particular market situation] affects the [cost of production] of the foreign like product because it distorts the cost of inputs, it is reasonable to conclude that such a situation may prevent a proper comparison of the export price with normal value based on home market prices just as it would when normal value is based on [constructed value]. . . . [A]n examination of a [particular market situation] for purposes of the sales-below-cost test is consistent with the Act when considering that the provision at issue, [19 U.S.C. § 1677b(e)], specifically includes the term "ordinary course of trade."

> The definition of that term, again, found in [Section 1677(15)], is integral to that [particular market situation] provision. Accordingly, it is consistent with the Act for Commerce to analyze a [particular market situation] allegation in determining whether a company's comparison-market sale prices were below cost, and therefore, are outside the "ordinary course of trade."

Second Remand Results at 4–5.  In Commerce's view, the amendments provide Commerce "discretion to use 'any other calculation methodology' if costs are distorted by a [particular market situation], including for the purposes of [the cost of production] . . . ."  Id. at 7.  In other words, Commerce made a particular market situation adjustment to costs based on Section 1677b(e).  Commerce asserted that the cost-based particular market situation analysis and alternative calculation methodology set forth in Section 1677b(e) are available whether Commerce bases normal value on home market sales or constructed value.  Commerce also asserted that the sales-below-cost test set forth in Section 1677b(b)(1), by relying on the phrase "ordinary course of trade" defined in Section 1677(15)(C) as excluding sales made in a particular market situation, authorizes Commerce to conduct the particular market situation analysis and adjust costs based on Sections 1677b(b)(1) and 1677(15)(C).  Id. at 4–5, 7.

Section 504 of the TPEA amended the statutory provisions governing constructed value.  The amendment authorizes Commerce to use alternative cost methodologies when computing constructed value after making a particular market

situation determination. The amended language provides:

> For purposes of paragraph (1) [in reference to calculating constructed value], if a particular market situation exists such that the cost of materials and fabrication or other processing of any kind does not accurately reflect the cost of production in the ordinary course of trade, the administering authority [Commerce] may use another calculation methodology under this part or any other calculation methodology.

19 U.S.C. § 1677b(e). The amended statute gives Commerce discretion to adjust the cost of production calculation methodology when determining constructed value if Commerce determines that a particular market situation exists. See id. Commerce cannot rely on Section 1677b(e) when Commerce bases normal value on home market sales. No part of the statute allows Commerce to use any other methodology when market sales are used for normal value. Saha Thai Steel Pipe Pub. Co., 43 CIT at __, 422 F. Supp. 3d at 1368–70; Husteel Co., 44 CIT at __, 426 F. Supp. 3d at 1383–89; Borusan, 44 CIT at __, 426 F. Supp. 3d at 1411–12; Dong-A Steel Co., 44 CIT at __, 475 F. Supp. 3d at 1340–41; Husteel, 44 CIT at __, 476 F. Supp. 3d at 1371; Saha Thai Steel Pipe Pub. Co., 44 CIT at __, 476 F. Supp. 3d at 1384. The "any other methodology" language is reserved solely for when normal value is determined by constructed value. Husteel Co., 44 CIT at __, 426 F. Supp. 3d at 1388.

With respect to Sections 1677b(b)(1) and 1677(15)(C), Defendant argues that Section 1677b(b)(1)'s reference to the phrase "ordinary course of trade"

authorizes Commerce to conduct a cost-based particular market situation analysis and make an adjustment in the course of the sales-below-cost test. Def. Cmts at 9–10.

Section 1677b(b)(1) provides:

(b) Sales at less than cost of production

>(1) Determination; sales disregarded
>
>Whenever the administering authority has reasonable grounds to believe or suspect that sales of the foreign like product under consideration for the determination of normal value have been made at prices which represent less than the cost of production of that product, the administering authority shall determine whether, in fact, such sales were made at less than the cost of production. If the administering authority determines that sales made at less than the cost of production—
>
>>(A)  have been made within an extended period of time in substantial quantities, and
>>
>>(B)  were not at prices which permit recovery of all costs within a reasonable period of time,
>
>such sales may be disregarded in the determination of normal value. Whenever such sales are disregarded, normal value shall be based on the remaining sales of the foreign like product in the ordinary course of trade. If no sales made in the ordinary course of trade remain, the normal value shall be based on the constructed value of the merchandise.

19 U.S.C. § 1677b(b)(1). Section 1677b(b)(1) sets forth the sales-below-cost test based on the calculation specified in Section 1677b(b)(3) to confirm that sales were made at less than the cost of production. Within Section 1677b(b) for "Sales

at less than cost of production," the subsection 1677b(b)(1) for "Determination; sales disregarded" authorizes Commerce to disregard those below-cost sales as outside the ordinary course of trade. Id. § 1677b(b)(1).

The plain language of the reference to "ordinary course of trade" provides that sales on which normal value are based must be in the ordinary course of trade. Id. § 1677b(b)(1), (a)(1)(B)(i). Sales made at less than cost, between affiliates, and in a particular market situation are excluded from the definition of "ordinary course of trade" in Section 1677(15). Thus, sales in those three categories are disregarded for purposes of calculating normal value based on market sales. Nothing in the statute grants Commerce the authority to modify the sales-below-cost test to permit a particular market situation analysis or adjustment, and the specificity of the sales-below-cost test leaves no ambiguity. See Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253–54 (1992) ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there.").

In sum, although Section 504 of the TPEA amended Section 1677b(e) for "Constructed value" to grant Commerce the discretion to use an alternative calculation methodology, and Section 1677(15) for "Ordinary course of trade" to grant Commerce an additional ground on which it may disregard sales from the normal value calculation when using home market sales, the Section 504

amendment did not amend Section 1677b(b), which sets out the calculation of the cost of production for the sales-below-cost test to determine whether and which sales should be disregarded as outside the ordinary course of trade when normal value is based on home market sales.  "[W]here 'Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'"  Thomas v. Nicholson, 423 F.3d 1279, 1284 (Fed. Cir. 2005) (quoting Russello v. United States, 464 U.S. 16, 23 (1983)).  Thus, the statute authorizes Commerce to disregard certain sales when basing normal value on home market sales, or to use an alternative calculation methodology upon a cost-based particular market situation determination when basing normal value on constructed value.

Commerce applied a cost-based particular market situation adjustment for purposes of the sales-below-cost test of Section 1677b(b)(1), while basing normal value on home market sales.  The statute does not authorize Commerce to adjust the cost of production as an alternative calculation methodology when using normal value based on home market sales under Section 1677b(e) as claimed by Commerce.  The statute also does not authorize Commerce to adjust the cost of production for purposes of the sales-below-cost test under Sections 1677b(b)(1) and 1677(15)(C) as claimed by Commerce.  Section 1677b(e) applies only when

Commerce bases normal value on constructed value. Because Commerce based normal value on home market sales, not constructed value, Section 1677b(e) is inapplicable. Nothing in Sections 1677b(b)(1) and 1677(15)(C) authorizes Commerce to adjust the cost of production for the sales-below-cost test. The court concludes, therefore, that Commerce's particular market situation adjustment to the cost of production is not in accordance with the law. Because Commerce may not adjust the cost of production when using normal value based on home market sales, the court does not consider the lawfulness or reasonableness of Commerce's adjustment calculation.

### III. Particular Market Situation Determination

Commerce determined on remand that a particular market situation distorted costs based on the totality of five factors, namely: (1) Korean subsidies of hot-rolled steel coil; (2) Korean imports of hot-rolled steel coil from China; (3) strategic alliances between Korean hot-rolled steel coil producers and CWP producers; (4) distortions in the Korean electricity market; and (5) steel industry restructuring efforts by the Korean Government. Remand Results at 6. Plaintiffs argue that Commerce's particular market situation determination is not in accordance with the law and is unsupported by substantial record evidence. Hyundai Cmts. at 2; SeAH Cmts. at 3–4.

Commerce based its particular market situation determination on distortions

in the cost of hot-rolled steel coil, a primary CWP input.  See Second Remand Results at 3; Remand Results at 4.  Commerce explained:

> Section 504 of the Trade Preferences Extension Act of 2015 (TPEA) added the concept of "particular market situation" in the definition of the term "ordinary course of trade," for purposes of [constructed value] under section [1677b(e)], and through these provisions for purposes of the [cost of production] under section [1677b(b)(3)].  Section [1677b(e)] of the Act states that "if a particular market situation exists such that the cost of materials and fabrication or other processing of any kind does not accurately reflect the [cost of production] in the ordinary course of trade, the administering authority may use another calculation methodology under this subtitle or any other calculation methodology."  Thus, under section 504 of the TPEA, Congress has given Commerce the authority to determine whether a [particular market situation] exists within the foreign market from which the subject merchandise is sourced, and to determine whether the costs of materials, fabrication, or processing of such merchandise fail to accurately reflect the [cost of production] in the ordinary course of trade.

Second Remand Results at 3–4.  Commerce made the particular market situation determination under Section 1677b(e) based on the assertion that Section 1677b(e)'s reference to "ordinary course of trade" incorporates Section 1677b(e) into the cost of production calculation in Section 1677b(b)(3).  Id. at 4–5.

As discussed in the previous section, Section 1677b(e) applies expressly when Commerce bases normal value on constructed value.  19 U.S.C. § 1677b(e).  Nothing in the statute can be read to authorize a cost-based particular market situation determination when Commerce bases normal value on home market sales.  The statute does not provide for a cost-based particular market situation analysis

when using home market sales to calculate normal value. Commerce made an unlawful particular market situation cost-based determination in this case, while basing normal value on home market sales. The court concludes that Commerce's cost-based particular market situation determination is not in accordance with the law, and the court thus does not consider whether Commerce's particular market situation determination is supported by substantial evidence on the record.

## CONCLUSION

The court concludes that Commerce's cost-based particular market situation determination and subsequent adjustment are not in accordance with the law.

Accordingly, it is hereby

**ORDERED** that the <u>Second Remand Results</u> are remanded for Commerce to reconsider its particular market situation determination and adjustment in light of this opinion; and it is further

**ORDERED** that this case will proceed according to the following schedule:

    (1)    Commerce shall file the third remand results on or before September 13, 2021;

    (2)    Commerce shall file the administrative record on or before September 27, 2021;

    (3)    Comments in opposition to the third remand results shall be filed on or before October 12, 2021;

(4)   Comments in support of the third remand results shall be filed on or before November 8, 2021; and

(5)   The joint appendix shall be filed on or before November 15, 2021.

                                                  /s/   Jennifer Choe-Groves
                                                  Jennifer Choe-Groves, Judge

Dated:  July 19, 2021
        New York, New York