A-580-809<br>
Remand<br>
Slip Op. 21-88<br>
POR: 11/1/2015-10/31/2016<br>
**Public Document**<br>
E&C/OI:TES

*Hyundai Steel Company v. United States*,
Consolidated Court No. 18-00154, Slip Op. 21-88 (CIT July 19, 2021)

**FINAL RESULTS OF REDETERMINATION
PURSUANT TO COURT REMAND**

**I.      Summary**

The Department of Commerce (Commerce) prepared these final results of redetermination pursuant to the remand order of the U.S. Court of International Trade (CIT) in *Hyundai Steel Company v. United States*, Court No. 18-00154, Slip Op. 21-88 (CIT July 19, 2021) (*Remand Order*). These final results of redetermination concern *Circular Welded Non-Alloy Steel Pipe from the Republic of Korea: Final Results of Antidumping Duty Administrative Review; 2015-2016*, 83 FR 27541 (June 13, 2018) (*Final Results*), and accompanying Issues and Decision Memorandum (IDM) as modified by *Final Results of Redetermination Pursuant to Court Remand Circular Welded Non-Alloy Steel Pipe from the Republic of Korea*, dated February 26, 2020 (*First Redetermination*) and *Final Results of Redetermination Pursuant to Court Remand Circular Welded Non-Alloy Steel Pipe from the Republic of Korea*, dated February 2, 2021 (*Second Redetermination*).

In the *Remand Order*, the CIT held that Commerce may not adjust the cost of production when using normal value based on home market sales, and that Commerce is not authorized to adjust the cost of production for purposes of the sales-below-cost test.[1] The CIT remanded the

---

[1] *See Remand Order* at 16-19.

*Second Redetermination* to Commerce to reconsider its particular market situation determination and adjustment in light of its opinion.[2]

## II.     Legal Framework

Section 504 of the Trade Preferences Extension Act of 2015 (TPEA) added the concept of "particular market situation" in the definition of the term "ordinary course of trade," and for purposes of constructed value under section 773(e) of Tariff Act of 1930, as amended (the Act).[3] Section 773(e) of the Act states that "if a particular market situation exists such that the cost of materials and fabrication or other processing of any kind does not accurately reflect the cost of production in the ordinary course of trade, the administering authority may use another calculation methodology under this subtitle or any other calculation methodology." Although the Act does not define "particular market situation," the Statement of Administrative Action (SAA) explains that examples where such a situation may exist include "where there is government control over pricing to such an extent that home market prices cannot be considered competitively set."[4]

Section 504 of the TPEA also amended the Act to provide Commerce with additional discretion when applying the "particular market situation" concept to determine normal value.[5] Specifically, in section 504 of the TPEA, Congress added the particular market situation concept to sales and transactions that Commerce will consider outside the "ordinary course of trade," and thus not usable in its antidumping calculations. Under section 771(15) of the Act, Commerce shall find "sales and transactions" to be "outside the ordinary course of trade" in situations in

---

[2] *Id.*
[3] *See Trade Preferences Extension Act of 2015*, Pub. L. No. 114-27, 129 Stat. 362 (2015) (TPEA).
[4] *See* Statement of Administrative Action Accompanying the Uruguay Round Agreements Act, H.R. Doc. 103-316, vol 1 (1994) at 822 (SAA).
[5] *See* TPEA.

2

which it "determines that the particular market situation prevents a proper comparison with the export price or constructed export price."[6]

Further, section 504 of the TPEA amended the constructed value provision in section 773(e) of the Act by permitting Commerce to use alternative cost calculation methodologies upon a particular market situation finding. Under section 773(e) of the Act, when Commerce, in calculating constructed value, finds that a "particular market situation exists such that the cost of materials and fabrication or other processing of any kind does not accurately reflect the cost of production in the ordinary course of trade," Commerce "may use another calculation methodology under this part or any other calculation methodology."

### III. Background

In the *Final Results*, Commerce found that record evidence supported a finding that a particular market situation existed in Korea which distorted the costs of production of circular welded non-alloy steel pipe (CWP) due to the totality of circumstances.[7] Specifically, Commerce found that the "collective impact of Korean {hot-rolled coil (HRC)} subsidies, Korean imports of HRC from China, strategic alliances, and government involvement in the Korean electricity market, a {particular market situation} exists in Korea which distorts the cost of production for CWP."[8]

Subsequently, the CIT found that Commerce's determination of the existence of a particular market situation in the *Final Results* was unsupported by substantial evidence and remanded the issue to Commerce for further proceedings[9] and, in response, Commerce made the *First Redetermination*. In the *First Redetermination*, Commerce considered an additional fifth

---

[6] *See* TPEA.
[7] *See Final Results* IDM at Comment 1.
[8] *Id.* at Comment 1.
[9] *See Hyundai Steel Company v. United States*, 415 F. Supp. 3d 1293 (CIT 2019)

3

factor, steel industry restructuring effort by the Korean government, and in evaluating the totality of circumstances based on all five factors, Commerce continued to find that a particular market situation existed in Korea. In response to the *First Redetermination*, Hyundai Steel Company (Hyundai Steel) argued for the first time that Commerce's determination contravened the statute by adjusting the cost of production for purposes of the sales-below-cost test.[10] We declined to address this argument in the *First Redetermination*, because Hyundai Steel had not raised this argument previously and, therefore, was not considered by the CIT as part of its holding.[11]

The CIT remanded the *First Redetermination* to Commerce to explain the statutory authority to conduct a cost-based particular market situation analysis when normal value is based on home market sales and to adjust the cost of production for purposes of the sales-below-cost test of section 773(b) of the Act, specifically within the context of relevant caselaw from the CIT.[12] In the *Second Redetermination*, we explained Commerce's interpretation of the statutory authority, in accordance with the CIT's order.[13]

On August 2, 2021, we released the Draft Results to interested parties for comment.[14] On August 9, 2021, we received comments from Wheatland Tube (the petitioner),[15] Hyundai Steel,[16] and SeAH Steel Corporation (SeAH).[17]

---

[10] *See First Redetermination* at 24.
[11] *Id*. at 39.
[12] *See Hyundai Steel Company v. United States*, 483 F. Supp. 3d 1273 (CIT 2020).
[13] *See Second Redetermination*.
[14] *See* Draft Results of Redetermination Pursuant to Court Remand, *Hyundai Steel Company v. United States*, Consolidated Court No. 18-00154, Slip Op. 21-88, dated August 2, 2021 (Draft Results).
[15] *See* Petitioner's Letter, "Certain Circular Welded Non-Alloy Steel Pipe from Korea: Comments on Draft Remand Results," dated August 9, 2021 (Petitioner's Comments).
[16] *See* Hyundai Steel's Letter, "Circular Welded Non-Alloy Steel Pipe from the Republic of Korea: Hyundai Steel's Comments on Draft Remand Redetermination," dated August 9, 2021 (Hyundai Steel's Comments).
[17] *See* SeAH's Letter, "Circular Welded Non-Alloy Steel Pipe from Korea – Comments on Draft Redetermination on Remand in Response to Slip Op. 21-88," dated August 9, 2021 (SeAH's Comments).

**IV.    Analysis**

In the *Remand Order*, the CIT held that "{n}othing in Sections {773(b)(1)} and {771(15)(C)} authorizes Commerce to adjust the cost of production for the sales-below-cost test," and that "Commerce's particular market situation adjustment to the cost of production is not in accordance with the law."[18]  Additionally, the CIT concluded "that Commerce's cost-based particular market situation determination is not in accordance with the law, and the CIT thus does not consider whether Commerce's particular market situation determination is supported by substantial evidence on the record."[19]  Thus, the CIT remanded the *Second Redetermination* to Commerce to reconsider its particular market situation determination and adjustment in light of its opinion.[20]

Commerce continues to find that a particular market situation existed in Korea during the period of review that distorted the price of HRC, the principal material input for the production of the subject merchandise and a significant component of the cost of production of the subject merchandise, based on the totality of circumstances of the five factors described above and in the *First Redetermination*.

Under section 504 of the TPEA, Congress provided that, when Commerce determines that a cost-based particular market situation exists, Commerce may, in accordance with section 773(e) of the Act, remedy the cost-based particular market situation through "any other calculation methodology."  Here, Commerce found the existence of a particular market situation in Korea that resulted in distortions in the Korean market for HRC.  Yet, despite the clear intent of Congress for Commerce to remedy a particular market situation which may distort the costs of

---

[18] *See Remand Order* at 17.
[19] *Id.* at 17-19.
[20] *Id.* at 19.

5

particular inputs used to produce the foreign like product and subject merchandise, including when certain U.S. sale prices are compared with normal value based on constructed value, the CIT, in the *Remand Order*, held that Commerce is not permitted to make a particular market situation adjustment to the cost of production as an alternative calculation methodology when using normal value based on home market sales, and that Commerce cannot adjust cost of production for purposes of the sales-below-cost test.  Commerce thus, in accordance with the CIT's *Remand Order*, is unable on remand to provide a remedy to address the particular market situation found in this administrative review when normal value is based on home market sales, contrary to the statutory intent of Congress.[21]  Because there is no other alternative for Commerce to make a particular market situation adjustment, under respectful protest,[22] we recalculated the weighted-average dumping margin of Hyundai Steel with no adjustment to account for the particular market situation that has been found to have existed during the period of review.

After considering comments in response to the Draft Results, we also recalculated the rate for the second mandatory respondent Husteel Co., Ltd. (Husteel), for the sole purpose of calculating the rate for SeAH, the non-examined company which is a party to this litigation.  We are not revising the cash deposit or assessment rates for Husteel because Husteel is not a party to this litigation and is therefore not entitled to the benefit of the recalculation.[23]  In recalculating the rate for Husteel, we did not apply a particular market situation adjustment for purposes of the sales-below-cost test, although we have applied a particular market situation adjustment for

---

[21] *See Altx, Inc. v. United States*, 370 F.3d 1108, 1111 n.2 (Fed. Cir. 2004).
[22] *See Viraj Group, Ltd. v. United States*, 343 F.3d 1371 (Fed. Cir. 2003).
[23] *See Capella Sales & Servs. Ltd. v. United States*, 180 F. Supp. 3d 1293 (CIT 2016) (*Capella I*), aff'd by 878 F.3d 1329 (Fed. Cir. 2018); *see also Capella Sales & Servs. Ltd. v. United States*, 181 F. Supp. 3d 1255, 1263-64 (CIT 2016) (*Capella II*), aff'd by 878 F.3d 1329 (Fed. Cir. 2018) (finding that, when the plaintiff failed to participate in the original litigation and failed to preserve its right to a remedy when it could have done so, it is not entitled to the benefit of a recalculated rate).

normal value in situations where it is determined based on constructed value. To calculate the rate for SeAH, we have used the simple average of the recalculated rates for Hyundai Steel and Husteel.

V.     **Comments on Draft Results of Redetermination**

Comment 1:  Whether Commerce Should Submit its Redetermination Under Protest

*Petitioner's Comments*

- Commerce's decision to submit its remand results under respectful protest is appropriate.[24]
    - The CIT's ruling in the *Remand Order* left Commerce no choice but to remove the particular market situation adjustment entirely.[25]

**Commerce's Position**:  We agree with the petitioner for the reasons discussed in the "Analysis" section, above. Accordingly, we have recalculated the margins for Hyundai Steel and SeAH under respectful protest.

Comment 2:  Whether a Particular Market Situation Exists

*Hyundai Steel's Comments*

- Commerce should determine that a particular market situation does not exist during the period of review.[26]
    - Commerce appears to have misinterpreted the CIT's remand instructions with respect to its particular market situation determination; the CIT held that "{n}othing in the

---

[24] *See* Petitioner's Comments at 1-5.
[25] *Id*. at 5.
[26] *See* Hyundai Steel's comments at 2-5.

7

- statute can be read to authorize a cost-based particular market situation determination when Commerce bases normal value on home market sales."[27]
  - The only logical conclusion from the CIT's holding and the consequent instructions in the remand proceeding would be for Commerce to reverse its particular market situation determination in this remand redetermination.[28]
  - Although Commerce claimed that its determination that a particular market situation existed was moot, Commerce's analysis is misplaced and cannot be sustained as a matter of law.[29]
  - Despite the CIT's clear holding that the Department's particular market situation determination was contrary to law, the Department continued to find that a particular market situation existed in the Draft Results.[30]

**Commerce's Position**:  We disagree with Hyundai Steel.  Although the CIT ruled that "{n}othing in the statute can be read to authorize a cost-based particular market situation determination *when Commerce bases normal value on home market sales*,"[31] and that "{t}he statute does not provide for a cost-based particular market situation analysis *when using home market sales to calculate normal value*," the CIT further stated that, because it concluded "that Commerce's cost-based particular market situation determination is not in accordance with the law … the court thus does not consider whether Commerce's particular market situation determination is supported by substantial evidence on the record."[32]  Thus, the CIT did not decide the issue of whether Commerce's particular market situation determination is supported

---

[27] *Id*. at 2 (citing *Remand Order* at 18-19).
[28] *Id*. at 3.
[29] *Id*.
[30] *Id*. at 4.
[31] *See Remand Order* at 18-19 (emphasis added).
[32] *Id*. at 19.

by substantial evidence based upon the totality of five factors. Therefore, we conclude that the CIT did not hold that Commerce cannot continue to determine that a particular market situation exists in Korea, such that Commerce could not make a particular market situation adjustment in situations where normal value is determined based on constructed value.

Moreover, as discussed above and in Comment 3, below, we recalculated Husteel's rate without making a particular market situation adjustment to cost of production for purposes of the cost test. Although we made no comparisons to constructed value with respect to Hyundai Steel, we did have such comparisons with respect to Husteel, and we made a particular market situation adjustment for such comparisons when recalculating Husteel's rate for the sole purpose of calculating SeAH's rate. Accordingly, the issue is no longer moot. For the reasons enunciated in the *Final Results* and the *First Redetermination*, we continue to find a particular market situation exists in Korea.

Comment 3: Whether to Recalculate the Margin for Husteel

*SeAH's Comments*

- If Commerce continues to apply the simple average of the mandatory respondents' rates to SeAH in the final redetermination, Commerce must use a revised margin without a particular market situation adjustment for Husteel.[33]
  - Because Husteel's margin in the *Final Results* was based on costs that were adjusted for a particular market situation, Commerce's Draft Results have improperly recalculated the dumping margin for SeAH based on a margin for Husteel that was adjusted for the purported particular market situation.[34]

---

[33] *See* SeAH's comments at 2.
[34] *Id*.

**Commerce's Position**: After consideration of the comments on the Draft Results, we agree with SeaH's argument that we should recalculate the rate for Husteel for the sole purpose of calculating SeAH's rate. We disagree, however, that no particular market adjustment is warranted. Because Husteel, unlike Hyundai, had comparisons to constructed value after we applied the sales-below-cost test, we made a particular market situation adjustment with respect to our calculation of constructed value for Husteel. Moreover, because Husteel is not party to this litigation, this recalculation only affects SeAH's rate.[35]

## VI. Final Results of Redetermination

Pursuant to the *Remand Order*, Commerce, under respectful protest, recalculated the weighted-average dumping margins for the respondents below without making a cost-based particular market situation adjustment. Accordingly, the revised weighted-average dumping margins for these companies are listed in the chart below:

| Company | *Final Results* Rate (Percent) | Remand Rate (Percent) |
|---|---|---|
| Hyundai Steel Company | 30.85 | 12.92[36] |
| SeAH Steel Corporation | 19.28 | 9.99[37] |

---

[35] *See Capella I,* 180 F. Supp. 3d at 1293; *Capella II,* 181 F. Supp. 3d at 1255.
[36] *See* Memorandum, "Circular Welded Non-Alloy Steel Pipe from the Republic of Korea: Draft Remand Results Calculation Memorandum for Hyundai Steel Company," dated August 2, 2021.
[37] We calculated the rate for SeAH using the simple average of the rates we calculated for the mandatory respondents, Hyundai Steel and Husteel. *See Circular Welded Non-Alloy Steel Pipe from the Republic of Korea: Preliminary Results of Antidumping Duty Administrative Review; 2015-2016*, 82 FR 57583, December 6, 2017), and accompanying Preliminary Determination Memorandum at 4, unchanged in *Final Results*. Accordingly, we have recalculated the rate for SeAH using the simple average of the rates we calculated in this remand for Hyundai and Husteel, the latter of which is 7.06 percent in this redetermination. *See* Memorandum, "Circular Welded Non-Alloy Steel Pipe from the Republic of Korea: Final Remand Results Calculation Memorandum for Husteel Co., Ltd.," dated concurrently with this redetermination.

Upon a final and conclusive decision in this litigation, Commerce will instruct U.S. Customs and Border Protection to liquidate appropriate entries for the November 1, 2015, through October 31, 2016, period of review consistent with these final results of redetermination.

9/8/2021

X _____

Signed by: CHRISTIAN MARSH

_____
Christian Marsh
Acting Assistant Secretary
 for Enforcement and Compliance