# UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: THE HONORABLE JENNIFER CHOE-GROVES

| | |
|---|---|
| HYUNDAI STEEL COMPANY and <br> SEAH STEEL CORPORATION, <br><br> *Plaintiff and Consolidated Plaintiff*, <br><br> v. <br><br> UNITED STATES, <br><br> *Defendant*, <br><br> and <br><br> WHEATLAND TUBE COMPANY, <br><br> *Defendant-Intervenor.* | Court No. 18-00154 <br> (consol.) |

## PLAINTIFF HYUNDAI STEEL COMPANY'S COMMENTS ON COMMERCE'S THIRD REMAND RESULTS

ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, N.W.
Washington, D.C. 20001
Phone: (202) 942-5000
Fax: (202) 942-5999

J. David Park
Henry D. Almond
Daniel R. Wilson
Leslie C. Bailey
Kang Woo Lee

*Counsel to Hyundai Steel Company
Plaintiff*

Dated: October 12, 2021

**TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................................1

II. ARGUMENT..........................................................................................................................2

    A. COMMERCE'S DECISION NOT TO APPLY A PMS ADJUSTMENT COMPLIES WITH THE COURT'S ORDER .........................................................2

    B. COMMERCE'S AFFIRMATIVE PMS FINDING DOES NOT COMPLY WITH THE COURT'S ORDER, BUT THIS IS A MOOT ISSUE WITH RESPECT TO HYUNDAI STEEL.......................................................................2

III. CONCLUSION......................................................................................................................4

**TABLE OF AUTHORITIES**

**Federal Cases**

*Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*,
　　494 F. Supp. 3d 1365 (Ct. Int'l Trade 2021) ................................................................... 3-4

*Hyundai Steel Company v. United States*,
　　Consol. Court No. 18-00154, Slip Op. 21-88 (Ct. Int'l Trade July 19, 2021)........... *passim*

i

I.      **INTRODUCTION**

Plaintiff Hyundai Steel Company ("Hyundai Steel") submits these comments in partial support of the Department of Commerce's ("the Department" or "Commerce") third remand redetermination in the twenty-fourth administrative review of the antidumping duty order covering Circular Welded Non-Alloy Steel Pipe from the Republic of Korea.  *See* Final Results of Redetermination Pursuant to Court Remand (Sept. 8, 2021), ECF No. 94 ("Third Remand Results").

Hyundai Steel supports the Third Remand Results in so far as Commerce did not adjust Hyundai Steel's reported costs to account for any particular market situation ("PMS"), in compliance with the Court's opinion and order in *Hyundai Steel Company v. United States*, Court No. 18-00154, Slip Op. 21-88 (CIT July 19, 2021) ("*Remand Order*").  Hyundai Steel further submits that, despite applying no PMS adjustment, Commerce improperly continued to find that a PMS existed during the period of review ("POR").  As Hyundai Steel has argued throughout this appeal, Commerce's determination that a PMS existed is unsupported by substantial record evidence and contrary to law.  Moreover, because Commerce was not permitted to apply a PMS adjustment, the issue of Commerce's PMS determination is moot as to Hyundai Steel, consistent with this Court's treatment of the issue previously.

As discussed below, Hyundai Steel does not object to the antidumping duty rate Commerce has calculated for Hyundai Steel in this remand proceeding, as Commerce calculated Hyundai Steel's margin without the application of a PMS adjustment.  Accordingly, Hyundai Steel respectfully requests that the Court affirm the antidumping duty rate Commerce calculated for Hyundai Steel in its Third Remand Results.

## II. ARGUMENT

### A. Commerce's Decision Not to Apply a PMS Adjustment Complies with the Court's Order

On third remand, Commerce, under protest, did not apply a PMS adjustment when calculating Hyundai Steel's dumping margin, stating:

> Here, Commerce found the existence of a particular market situation in Korea that resulted in distortions in the Korean market for HRC. Yet, …the CIT, in the *Remand Order*, held that Commerce is not permitted to make a particular market situation adjustment to the cost of production as an alternative calculation methodology when using normal value based on home market sales, and that Commerce cannot adjust cost of production for purposes of the sales-below-cost test. Commerce thus, in accordance with the CIT's *Remand Order*, is unable on remand to provide a remedy to address the particular market situation found in this administrative review when normal value is based on home market sales, contrary to the statutory intent of Congress. Because there is no other alternative for Commerce to make a particular market situation adjustment, under respectful protest, we recalculated the weighted-average dumping margin of Hyundai Steel with no adjustment to account for the particular market situation that has been found to have existed during the period of review.

Third Remand Results at 5-6.

Hyundai Steel fully supports Commerce's determination to remove any element of a particular market situation ("PMS") adjustment to the calculation of Hyundai Steel's costs. This is the only possible outcome under the statute and the only outcome that would accord with the remand order. *See Remand Order*. As a result, Commerce calculated a remand rate of 12.92 percent for Hyundai Steel. *Id*. This aspect of Commerce's Third Remand Results fully complies with the Court's remand order, *see Remand Order*, and accordingly should be affirmed.

### B. Commerce's Affirmative PMS Finding Does Not Comply with the Court's Order, but this Is a Moot Issue with Respect to Hyundai Steel

While Commerce did not apply a PMS adjustment on third remand, Commerce did continue to make an affirmative PMS finding:

2

> Commerce continues to find that a particular market situation existed in Korea during the period of review that distorted the price of HRC, the principal material input for the production of the subject merchandise and a significant component of the cost of production of the subject merchandise, based on the totality of circumstances of the five factors described … in the *First Redetermination*.

Third Remand Results at 5.

Although this aspect of Commerce's analysis has no impact on the calculated antidumping duty margin for Hyundai Steel, Hyundai Steel continues to disagree with Commerce's repeated affirmative PMS determination. As Hyundai Steel has reiterated throughout these proceedings, Commerce's continued finding that a PMS existed during the period of review is unsupported by the record and is not reasonable. Moreover, as the Court has concluded in a recent opinion addressing a PMS adjustment and determination, the issue of Commerce's PMS determination is moot where the Court concludes that the statute does not permit a PMS adjustment. *See Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*, 494 F. Supp. 3d 1365, 1371 (Ct. Int'l Trade 2021) ("Because a PMS adjustment is not permitted for the purposes of the sales-below-cost test, any claims relating to … Commerce's determination that a PMS existed are now mooted.").

Hyundai Steel further submits that Commerce's reading of the Court's opinion that an affirmative PMS finding can still be supported by substantial record evidence, even where Commerce implements no actual calculation adjustment, is illogical and contrary to the Court's reasoning. To be clear, the Court held *both* that Commerce's "particular market situation adjustment to the cost of production is not in accordance with the law," *Remand Order* at 17, *and* that Commerce's "cost-based particular market situation determination is not in accordance with the law." *Id.* at 19. In particular, in the *Remand Order*, the Court held that:

> Nothing in the statute can be read to authorize a cost-based particular market situation *determination* when Commerce bases normal value on home market

3

>sales. The statute does not provide for a cost-based particular market situation *analysis* when using home market sales to calculate normal value. Commerce made an unlawful particular market situation cost-based determination in this case, while basing normal value on home market sales.

*Remand Order* at 18-19 (emphases added). To reiterate, the Court explicitly stated that "Commerce made an unlawful particular market situation cost-based *determination* in this case." *Id.* at 19 (emphasis added). The Court accordingly instructed Commerce to "reconsider its particular market situation *determination and adjustment*." *Id.* (emphases added). The only logical conclusion from the Court's holding and the consequent instruction is that Commerce must reverse its PMS determination.

And yet, nevertheless, despite the Court's clear holding that Commerce's PMS *determination* was contrary to law, Commerce continued to find on third remand that a particular market situation existed in Korea during the period of review. This aspect of the Third Remand Results clearly does not comply with the Court's explicit conclusion and instructions in the remand order. *Remand Order* at 18-19 ("Nothing in the statute can be read to authorize a cost-based particular market situation determination when Commerce bases normal value on home market sales.").

While Hyundai Steel continues to submit that Commerce's determination that a PMS existed in this case is unsupported by substantial record evidence, consistent with the Court's prior conclusion, the issue of Commerce's PMS determination is moot where, as with Hyundai Steel's calculations, the statute does not permit a PMS adjustment. *See Borusan Mannesman*, 494 F. Supp. 3d at 1371.

### III.  CONCLUSION

For the foregoing reasons, Hyundai Steel submits that the Third Remand Results comply with the Court's remand order in so far as Commerce determined on third remand not to apply a

4

particular market situation adjustment to Hyundai Steel's costs. At the same time, Hyundai Steel submits that the Court need not reach the issue of Commerce's PMS determination with respect to Hyundai Steel, as the issue is moot in light of Commerce's inability to apply a PMS adjustment in Hyundai Steel's calculations.

Accordingly, Hyundai Steel respectfully requests that the Court proceed to affirm Commerce's calculation of Hyundai Steel's antidumping duty margin without reference to a PMS adjustment.

>Respectfully submitted,
>
>/s/ J. David Park
>J. David Park
>Henry D. Almond
>Daniel R. Wilson
>Leslie C. Bailey
>Kang Woo Lee
>
>*Counsel to Hyundai Steel Company Plaintiff*
>
>Arnold & Porter Kaye Scholer LLP
>601 Massachusetts Avenue, N.W.
>Washington, D.C. 20001
>Phone: (202) 942-5000
>E-mail: David.Park@apks.com

**Dated: October 12, 2021**

5

**UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE JENNIFER CHOE-GROVES**

|  |  |
|---|---|
| **HYUNDAI STEEL COMPANY and SEAH STEEL CORPORATION,** *Plaintiff and Consolidated Plaintiff*, v. **UNITED STATES,** *Defendant*, and **WHEATLAND TUBE COMPANY,** *Defendant-Intervenor.* | **Court No. 18-00154 (consol.)** |

**CERTIFICATE OF COMPLIANCE WITH CHAMBERS PROCEDURE 2(B)(1)**

The undersigned hereby certifies that the attached Consolidated Plaintiff Hyundai Steel Company's Comments on Remand, filed on October 12, 2021, contains 1,288 words, exclusive of the table of contents, table of authorities, and counsel's signature block, according to the word count function of the word-processing system used to prepare this memorandum, and therefore complies with the maximum 10,000 word count limitation set forth in the Court's Chambers Procedures.

By:  /s/ J. David Park
J. David Park

Dated: October 12, 2021