# UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| HYUNDAI STEEL COMPANY, <br><br> Plaintiff, <br> and <br><br> SEAH STEEL CORPORATION, <br><br> Consolidated Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br> and <br><br> WHEATLAND TUBE COMPANY, <br><br> Defendant-Intervenor. | Consol. Court No. 18-00154 |

## DEFENDANT'S RESPONSE TO COMMENTS REGARDING THE THIRD REMAND REDETERMINATION

|  |  |
|---|---|
|  | BRIAN M. BOYNTON <br> Acting Assistant Attorney General |
|  | JEANNE E. DAVIDSON <br> Director |
| OF COUNSEL: | PATRICIA M. MCCARTHY <br> Assistant Director |
| ELIO GONZALEZ <br> Senior Attorney <br> Office of the Chief Counsel <br>   for Trade Enforcement & Compliance <br> U.S. Department of Commerce | U.S. Department of Justice <br> Commercial Litigation Branch <br> Department of Justice <br> P.O. Box 480, Ben Franklin Station <br> Washington, D.C. 20044 <br> Tel. (202) 307-0164 <br> Fax. (202) 307-0972 <br> Email: patricia.mccarthy@usdoj.gov |
| November 8, 2021 | Attorneys for Defendant United States |

# **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ................................................................................................... ii

BACKGROUND ......................................................................................................................2

      I.      The Administrative Decision Under Review ........................................................2

      II.     The Court's First Remand Order and Commerce's First Remand Results .............2

      III.    The Court's Second Remand Order and Commerce's Second Remand Results ....3

      IV.    The Court's Third Remand Order and Commerce's Third Remand Results ..........4

ARGUMENT ............................................................................................................................5

      I.      Standard of Review ...............................................................................................5

      II.     Commerce Complied With The Court's Remand Order ........................................6

      III.    Commerce's Particular Market Situation Determination Is Supported By
             Substantial Evidence ...........................................................................................10

CONCLUSION .......................................................................................................................12

## TABLE OF AUTHORITIES

**CASES**                                                                                                                    **PAGE(S)**

*Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*,
    494 F. Supp. 3d 1365 (Ct. Int'l Trade 2021) ........................................................................ 9

*Capella Sales & Servs. Ltd. v. United States*,
    180 F. Supp. 3d 1293 (Ct. Int'l Trade 2016) ........................................................................ 5

*Capella Sales & Servs. Ltd. v. United States*,
    181 F. Supp. 3d 1255 (Ct. Int'l Trade 2016) ........................................................................ 5

*FAG Italia S.p.A. v. United States*,
    948 F. Supp. 67 (Ct. Int'l Trade 1996) ................................................................................. 8

*Husteel Co., Ltd. v. United States*,
    476 F. Supp. 3d 1363 (Ct. Int'l Trade 2020) ........................................................................ 9

*Hyundai Steel Co. v. United States*,
    415 F. Supp. 3d 1293 (Ct. Int'l Trade 2019) ........................................................................ 2

*Hyundai Steel Company v. United States,*
    483 F. Supp. 3d 1273 (Ct. Int'l Trade 2020) ........................................................................ 3

*Hyundai Steel Company v. United States*,
    2021 WL 3028124 (Ct. Int'l Trade July 19, 2021) ..................................................... passim

*MacLean-Fogg Co. v. United States*,
    100 F. Supp. 3d 1349 (Ct. Int'l Trade 2015) ........................................................................ 5

*NEXTEEL Co. v. United States*,
    392 F. Supp. 3d 1276 (Ct. Int'l Trade 2019) .................................................................... 2, 3

*NEXTEEL Co., Ltd. v. United States*,
    450 F. Supp. 3d 1333 (Ct. Int'l Trade 2020) ...................................................................... 11

*Torrington Co. v. United States,*
    960 F. Supp. 339 (Ct. Int'l Trade 1997) ............................................................................... 8

*Tung Fong Indust. Co., Inc. v. United States,*
    318 F. Supp. 2d 1321 (Ct. Int'l Trade 2004) ........................................................................ 8

**STATUTES**

19 U.S.C. § 1516a(b)(1)(B)(i) ................................................................................................. 5

19 U.S.C. § 1677 ................................................................................................................ 3, 6, 7, 9

## **REGULATIONS**

*Circular Welded Non-Alloy Steel Pipe from the Republic of Korea,*
    83 Fed. Reg. 27,541 (Dep't of Commerce June 13, 2018). ........................................... 2, 3

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| HYUNDAI STEEL COMPANY, | ) |
| Plaintiff, | ) |
| and | ) |
| SEAH STEEL CORPORATION, | ) |
| Consolidated Plaintiff, | ) |
| v. | ) Consol. Court No. 18-00154 |
| UNITED STATES, | ) |
| Defendant, | ) |
| and | ) |
| WHEATLAND TUBE COMPANY, | ) |
| Defendant-Intervenor. | ) |

**DEFENDANT'S RESPONSE TO COMMENTS<br>REGARDING THE THIRD REMAND REDETERMINATION**

Defendant, the United States, respectfully responds to the comments of plaintiff SeAH Steel Corporation (SeAH) (ECF No. 96), plaintiff Hyundai Steel Company (Hyundai Steel) (ECF No. 99), and defendant-intervenor Wheatland Tube Company (Wheatland) (ECF No. 100), regarding the final results of the United States Department of Commerce's (Commerce) third remand results filed in accordance with this Court's decision and remand order in *Hyundai Steel Company v. United States*, 2021 WL 3028124 (Ct. Int'l Trade July 19, 2021) (*Hyundai Steel III*). Final Results of Redetermination Pursuant to Court Remand, Sept. 8, 2021, ECF No. 94 (Third

Remand Results).  For the reasons set forth below, we respectfully request that the Court sustain Commerce's third remand results and enter final judgment.

## BACKGROUND

### I. The Administrative Decision Under Review

This consolidated case involves challenges to the final results of Commerce's administrative review of the antidumping duty order covering circular welded non-alloy steel pipe (CWP) from the Republic of Korea, during the 2015-2016 review period.  *See Circular Welded Non-Alloy Steel Pipe from the Republic of Korea*, 83 Fed. Reg. 27,541 (Dep't of Commerce June 13, 2018) (final results admin. review), and accompanying issues and decision memorandum (IDM).  In the final results, Commerce determined that a particular market situation in Korea had distorted the cost of production of CWP based on the cumulative effect of four factors:  (1) Korean subsidies of hot-rolled steel coil; (2) Korean imports of hot-rolled steel coil from China; (3) strategic alliances between Korean hot-rolled steel coil producers and CWP producers; and (4) distortions in the Korean electricity market.  IDM at 23.

### II. The Court's First Remand Order and Commerce's First Remand Results

In 2019, the Court held that Commerce's particular market situation determination in the final results was unsupported by substantial evidence because Commerce had relied exclusively on documents placed on the record of the administrative review of the antidumping duty order covering oil country tubular goods from the Republic of Korea for the 2014-2015 period of review, which the Court held was insufficient to support Commerce's particular market situation determination in that review.  *Hyundai Steel Co. v. United States*, 415 F. Supp. 3d 1293, 1301 (Ct. Int'l Trade 2019) (*Hyundai Steel I*) (citing *NEXTEEL Co. v. United States*, 392 F. Supp. 3d

1276, 1287-88 (Ct. Int'l Trade 2019)).  The Court remanded the issue to Commerce for "further proceedings."  *Id.*

In the first remand results, Commerce provided further analysis and explanation regarding its particular market situation determination.  *See* Final Results of Redetermination Pursuant to Court Remand, Feb. 26, 2019, ECF No. 73 (First Remand Results).  Specifically, Commerce reevaluated the evidence under its totality of circumstances approach, considered an additional factor – steel industry restructuring efforts by the Korean government – and based on the cumulative effect of the five factors, Commerce continued to find the existence of a particular market situation in Korea.  *Id.* at 4-15, 24-39.  But during the first remand proceedings, Hyundai Steel argued for the first time that the particular market situation provisions in the statute are limited to constructed value, and that Commerce could not lawfully apply a particular market situation adjustment to the cost of production for purposes of the sales-below-cost test.  *Id.* at 24, 39.  Commerce declined to address Hyundai Steel's new argument in the first remand results because the Court had not considered it as part of its holding in the first remand order.  First Remand Results at 39.

### III. The Court's Second Remand Order and Commerce's Second Remand Results

In 2020, the Court issued a second remand order.  *Hyundai Steel Company v. United States,* 483 F. Supp. 3d 1273 (Ct. Int'l Trade 2020) (*Hyundai Steel II*).  Although Hyundai Steel had not previously argued in this case that Commerce could not make a particular market situation adjustment to cost of production for purposes of the sales-below-cost test, the Court held that "departure from the general rule of waiver is warranted."  *Id*. at 1276-77.  The Court remanded "for Commerce to explain its position regarding the statutory authority to adjust the cost of production for purposes of the sales-below-cost test of Section 1677b(b), specifically

within the context of relevant caselaw." *Id.* at. 1281.  The Court did not rule on Commerce's further analysis and revised determination in the first remand results that a particular market situation exists in Korea based on the cumulative effect of five factors.

In the second remand results, Commerce, as ordered by the Court, explained its statutory interpretation of its authority to conduct a cost-based particular market situation analysis when normal value is based on home market sales, and to adjust the cost of production for purposes of the sales-below-cost test.  *See* Final Results of Redetermination Pursuant to Court Remand, Feb. 2, 2021, ECF No. 85 (Second Remand Results).

## IV.     The Court's Third Remand Order and Commerce's Third Remand Results

The Court issued a third remand order, in which it held that Commerce may not adjust the cost of production when using normal value based on home market sales, and that Commerce is not authorized to adjust the cost of production for purposes of the sales-below-cost test. *Hyundai Steel III*, 2021 WL 3028124, at *7.  For these same reasons (that is, that the statute does not authorize a cost-based particular market situation determination when Commerce bases normal value on home market sales and does not authorize a cost-based particular market situation analysis when using home market sales to calculate normal value), the Court held that Commerce's particular market situation determination was unlawful.  *Id.* at *8.  The Court, however, "{did} not consider whether Commerce's particular market situation determination is supported by substantial evidence on the record."  *Id*.

In the third remand results, Commerce continued to find, based on the totality of circumstances of the five factors described above and in the first remand results, that a particular market situation existed in Korea during the period of review which distorted the price of hot-rolled steel coil.  *See* Third Remand Results at 5-6.  Additionally, under respectful protest,

Commerce recalculated the weighted-average dumping margin of Hyundai Steel with no adjustment to account for the particular market situation. *Id.* at 6. Commerce also recalculated the rate for the second mandatory respondent Husteel Co., Ltd. (Husteel) for the sole purpose of calculating the rate for SeAH, the non-individually examined company who is a party to this litigation.[1] *Id.* at 6-7, 9-10. In recalculating the rate for Husteel, Commerce did not apply a particular market situation adjustment for purposes of the sales-below-cost test, in accordance with the Court's decision. *Id.* Yet, because Husteel had certain sales in which Commerce had determined normal value based on constructed value, in those situations, Commerce applied a particular market situation adjustment. *Id.* Commerce then used a simple average of the recalculated rates for Hyundai Steel and Husteel to determine the rate for SeAH. *Id*.

## ARGUMENT

**I.     Standard of Review**

In remand proceedings, the Court will sustain Commerce's antidumping determinations if they are "in accordance with the remand order," and are "supported by substantial evidence and are otherwise in accordance with law." *See MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)).

---

[1] Because Husteel is not a party to this litigation, Commerce recalculated Husteel's rate solely for purposes of recalculating SeAH's rate. Husteel's rate was not revised because it is not a party to this litigation and is not entitled to the benefit of the recalculation. *See Capella Sales & Servs. Ltd. v. United States*, 180 F. Supp. 3d 1293 (Ct. Int'l Trade 2016) (*Capella I*), aff'd by 878 F.3d 1329 (Fed. Cir. 2018); *see also Capella Sales & Servs. Ltd. v. United States*, 181 F. Supp. 3d 1255, 1263-64 (Ct. Int'l Trade 2016) (*Capella II*), aff'd by 878 F.3d 1329 (Fed. Cir. 2018) (finding that, when the plaintiff failed to participate in the original litigation and failed to preserve its right to a remedy when it could have done so, it is not entitled to the benefit of a recalculated rate).

## II. Commerce Complied With The Court's Remand Order

In *Hyundai Steel III*, the Court held that "{t}he statute does not authorize Commerce to adjust the cost of production as an alternative calculation methodology when using normal value based on home market sales under Section 1677b(e)" and that "{t}he statute also does not authorize Commerce to adjust the cost of production for purposes of the sales-below-cost test under Sections 1677b(b)(1) and 1677(15)(C)." *Hyundai Steel III*, 2021 WL 3028124, at *4-8. Thus, for these reasons, the Court held that Commerce's particular market situation determination and subsequent adjustment were unlawful. *Id.* As to Commerce's revised determination that a particular market situation exists in Korea based on the totality of five factors, the Court stated that it did not consider "whether Commerce's particular market situation determination is supported by substantial evidence on the record," and thus, the Court did not decide this issue. *Id.* at *7.

Commerce's third remand results comply with the Court's decision and should be sustained. Specifically, on remand, in situations where it based normal value on home market sales, Commerce did not adjust cost of production. Commerce also removed the particular market situation adjustment to cost of production for purposes of the sales-below-cost test. Third Remand Results at 8-10. For Hyundai Steel, a mandatory respondent in the underlying review, normal value was based only on home market sales (that is, Hyundai Steel had no sales in which Commerce made comparisons to constructed value). Thus, under respectful protest, Commerce recalculated the weighted-average dumping margin for Hyundai Steel with no adjustment to

account for the particular market situation Commerce found to have existed in Korea during the period of review.

The rate for SeAH, a non-individually examined company participating in this litigation, was based on the simple average of the rates for the two mandatory respondents – Hyundai Steel and Husteel.  To calculate the rate for SeAH, Commerce was faced with the situation in which it needed to recalculate Husteel's rate in order to recalculate SeAH's rate.  Thus, although Husteel is not a party to this litigation and is not entitled to receive the benefit of a revised rate, Commerce recalculated Husteel's rate for the sole purpose of recalculating SeAH's rate.  As Commerce explained in the third remand results, unlike Hyundai Steel, Husteel did have comparisons to constructed value after applying the sales-below-cost test without any particular market situation adjustment.  As explained below and in the first remand results, Commerce has continued to find that a particular market situation exists in Korea based on the cumulative effect of five factors, and the Court has not yet ruled on Commerce's particular market situation determination.  For Husteel's sales where Commerce made comparisons to constructed value to determine normal value, Commerce applied a particular market situation adjustment in recalculating Husteel's rate for purposes of recalculating SeAH's rate.  The Court has recognized that 19 U.S.C. § 1677b(e) authorizes Commerce to use an alternative calculation methodology in making a cost-based particular market situation determination when basing normal value on constructed value.  *Hyundai Steel III*, 2021 WL 3028124, *6.  Therefore, Commerce permissibly applied a particular market situation adjustment to Husteel's sales that were compared to constructed value when determining normal value.  The Court should sustain Commerce's

revised rates for Hyundai Steel and SeAH, the two parties participating in this litigation, as supported by substantial evidence and in accordance with law.

Hyundai Steel agrees with Commerce's determination to remove a particular market situation adjustment to the calculation of Hyundai Steel's margin, but disagrees that Commerce may continue to make a particular market situation determination.  Hyundai Steel Comments at 2-4.  According to Hyundai Steel, the Court held that both Commerce's particular market situation adjustment and its cost-based particular market situation determination are not in accordance with law.  *Id.*  As a threshold matter, as Hyundai Steel admits, this issue is moot as to Hyundai Steel because it had no sales that Commerce had compared to constructed value, and thus, Commerce completely removed the particular market situation adjustment from the calculation of Hyundai Steel's margin.  Therefore, Hyundai Steel lacks standing to raise this argument because it suffers no cognizable injury, and it is precluded from seeking redress for parties other than itself.  *See Tung Fong Indust. Co., Inc. v. United States,* 318 F. Supp. 2d 1321, 1338 (Ct. Int'l Trade 2004) (holding that a party granted its own margin lacks standing to challenge another party's rate when there is no showing that it may suffer cognizable injury as a result of that other party's rate; "the company's challenge to the calculation of that rate must be rejected for lack of standing");  *see also Torrington Co. v. United States,* 960 F. Supp. 339, 349 (Ct. Int'l Trade 1997); *FAG Italia S.p.A. v. United States*, 948 F. Supp. 67 (Ct. Int'l Trade 1996)).

Even if the Court considers Hyundai Steel's argument, Hyundai Steel's selective reading of the Court's opinion ignores the entirety of the Court's reasoning and holding.  The Court held that "{n}othing in the statute can be read to authorize a cost-based particular market situation *when Commerce bases normal value on home market sales*." *Hyundai Steel III*, at *7 (emphasis

added). The Court did not hold that Commerce cannot make a particular market situation determination in situations where normal value is based on constructed value. In fact, the Court recognized that 19 U.S.C. § 1677b(e) permits Commerce to make a particular market situation determination when normal value is based on constructed value. *Id.* at *6 ("the statute authorizes Commerce…to use an alternative calculation methodology upon a cost-based particular market situation determination when basing normal value on constructed value."); *see also Husteel Co., Ltd. v. United States*, 476 F. Supp. 3d 1363, 1371 (Ct. Int'l Trade 2020) ("In other words, the amended statute gives Commerce discretion to adjust the cost of production calculation methodology when determining constructed value if Commerce determines that a particular market situation exists."). Thus, Hyundai Steel is wrong to suggest that Commerce could not continue to determine that a particular market situation exists in Korea, and to make an adjustment in situations where normal value is based on constructed value.

Similarly, Hyundai Steel is incorrect when it argues that the Court's holding that the statute does not permit a particular market situation adjustment renders Commerce's particular market situation finding moot. Hyundai Steel's Comments at 3 (citing *Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*, 494 F. Supp. 3d 1365 (Ct. Int'l Trade 2021)). Although the Court determined in *Borusan* that Commerce's determination that a particular market situation exists was moot, it did so in the context of Commerce determining normal value based on home market sales. *See id.*, 494 F. Supp. 3d at 1367 ("Normal value is based on home market sales or a substitute. Here, home market sales were used.") (citations omitted). By contrast, in this case, Commerce explained that while it "made no comparisons to constructed value with respect to Hyundai Steel, {Commerce} did have such comparisons with respect to Husteel…." *See* Third Remand Results at 9. Thus, because Commerce made comparisons to

constructed value as the basis for normal value for some of Husteel's sales after applying the sales-below-cost test without any particular market situation adjustment, the issue of whether a particular market situation exists is no longer a moot issue.

In its comments in partial opposition to Commerce's third remand results, Wheatland disagrees with the Court's holding that Commerce is not permitted to make a particular market situation adjustment to cost of production as an alternative calculation methodology, and with the aspects of Commerce's decision on remand that conform to the Court's decision. Wheatland Comments at 1. But Wheatland also acknowledges that Commerce faced no choice but to comply with the Court's order, and thus, it supports Commerce's decision to submit the remand results under respectful protest. *Id.* We disagree with Wheatland's opposition to Commerce's third remand results because, as Wheatland recognizes, Commerce in fact complied with the Court's decision. Thus, the third remand results should be sustained.

### III. Commerce's Particular Market Situation Determination Is Supported By Substantial Evidence

Commerce's determination that a particular market situation exists in Korea is supported by substantial evidence. In the first remand results, Commerce provided further analysis and explanation regarding its determination that a particular market situation exists in Korea. *See* First Remand Results 4-15, 24-39. Specifically, Commerce provided further explanation and cited specific record evidence regarding: 1) the subsidization by the Korean government of hot-rolled coil, the primary input of CWP, which in turn had a significant impact on production costs of CWP; 2) the significant overcapacity of Chinese steel production, which inundated the Korean steel market with cheap Chinese steel products and placed downward pressure on Korean domestic steel prices; 3) the strategic alliances between certain Korean hot-rolled coil suppliers and CWP producers, that may have affected prices in 2012-13 and subsequent periods, including

the period of review in this case; and 4) the distortions present in the electricity market, where the prices for electricity are set by the Korean government, and where electricity functions as a tool of the government's industrial policy.  *Id.*  In addition, Commerce considered a fifth factor, in which it examined evidence that the Korean government plays an active role in restructuring the private steel industry.  *Id.*  Based on Commerce's evaluation of all five factors, Commerce found that the totality of circumstances supports a finding that a particular market situation exists in Korea.  *Id.*

SeAH disagrees with Commerce's determination that a particular market situation exists in Korea and incorporates by reference Hyundai Steel's comments in opposition to the First Remand Results.  SeAH's Comments at 4-6.  SeAH relies on the Court's decision in *NEXTEEL*, which involves an administrative review of the antidumping duty order covering oil country tubular goods from Korea.  *Id.* at 5-6 (citing *NEXTEEL Co., Ltd. v. United States*, 450 F. Supp. 3d 1333 (Ct. Int'l Trade 2020)).  In *NEXTEEL,* this Court held that Commerce's analysis and explanation of the five factors supporting a particular market situation are unsupported by substantial evidence.  *NEXTEEL,* 450 F. Supp. 3d at 1337-43.  Although the Court's decision in *NEXTEEL* involves a separate antidumping duty order and a different determination by Commerce, we recognize that facts are similar and that much of the evidence that Commerce considered in *NEXTEEL* is the same as or similar to the evidence at issue in this case.  We respectfully disagree with the Court's opinion in *NEXTEEL* and observe that the decision is not final and is currently on appeal.  *See NEXTEEL Co., Ltd. v. United States*, Court of Appeals for the Federal Circuit, Case No. 2021-1334.

In the interest of brevity, we incorporate by reference our comments in support of the first remand results, which discussed at length how Commerce's revised particular market situation

analysis is supported by substantial evidence.  *See* Defendant's Response to Plaintiff's Comments Regarding the Remand Redetermination, Apr. 13, 2020, ECF No. 78.  As explained above, the Court has not ruled on Commerce's further analysis and explanation that a particular market situation exists in Korea based on the cumulative effect of five factors.  Because this issue is not moot, the Court should consider Commerce's further explanation discussed in the first remand results and sustain Commerce's determination that a particular market situation exists in Korea as supported by substantial evidence.

## CONCLUSION

For these reasons, we respectfully request that the Court sustain Commerce's third remand results and enter final judgment in favor of the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

OF COUNSEL:

ELIO GONZALEZ
Senior Attorney
Office of the Chief Counsel
   for Trade Enforcement & Compliance
U.S. Department of Commerce

/s/ Patricia M. McCarthy
PATRICIA M. MCCARTHY
Assistant Director
U.S. Department of Justice
Commercial Litigation Branch
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 307-0164
Fax:  (202) 307-0972
Email: patricia.mccarthy@usdoj.gov

November 8, 2021

Attorneys for Defendant United States

**CERTIFICATE OF COMPLIANCE**

I hereby certify, pursuant to section 2(B)(1) of the Standard Chambers Procedures of this Court, that this brief contains 3,310 words, excluding the table of contents, table of authorities, any addendum containing statutes, rules or regulations, any certificates of counsel, and counsel's signature, as calculated by the word processing system used to prepare this brief (Microsoft Word).

 /s/ Patricia M. McCarthy
Patricia M. McCarthy