Slip Op. 22-98

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| HYUNDAI STEEL COMPANY, <br><br> Plaintiff, <br><br> and <br><br> SEAH STEEL CORPORATION, <br><br>   Consolidated Plaintiff and Plaintiff-Intervenor, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> WHEATLAND TUBE COMPANY, <br><br> Defendant-Intervenor. | Before: Jennifer Choe-Groves, Judge <br><br> Consol. Court No. 18-00154 |

**OPINION**

[Sustaining the U.S. Department of Commerce's fourth remand results of the 2015–2016 administrative review of the antidumping duty order on circular welded non-alloy steel pipe from the Republic of Korea.]

Dated: August 24, 2022

J. David Park, Henry D. Almond, Daniel R. Wilson, and Kang Woo Lee, Arnold & Porter Kaye Scholer LLP, of Washington, D.C., for Plaintiff Hyundai Steel Company.

Jeffrey M. Winton, Amrietha Nellan, Jooyoun Jeong, and Michael J. Chapman, Winton & Chapman PLLC, of Washington, D.C., for Consolidated Plaintiff and Plaintiff-Intervenor SeAH Steel Corporation.

Joshua E. Kurland, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendant United States. With him on the brief were Brian M. Boynton, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director. Of counsel on the brief was Elio Gonzalez, Senior Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce.

Roger B. Schagrin, Elizabeth J. Drake, and Michelle R. Avrutin, Schagrin Associates, of Washington, D.C., for Defendant-Intervenor Wheatland Tube Company.

  Choe-Groves, Judge:  Plaintiff Hyundai Steel Company ("Hyundai Steel") and Consolidated Plaintiff and Plaintiff-Intervenor SeAH Steel Corporation ("SeAH") (collectively, "Plaintiffs") challenge the final determination in the 2015–2016 administrative review of the antidumping duty order covering circular welded non-alloy steel pipe ("CWP") from the Republic of Korea ("Korea").  Circular Welded Non-Alloy Steel Pipe from the Republic of Korea ("Final Results"), 83 Fed. Reg. 27,541 (Dep't of Commerce June 13, 2018) (final results of antidumping duty administrative review; 2015–2016); see also Issues and Decision Mem. for the Final Results of Antidumping Duty Admin. Review of Circular Welded Non-Alloy Steel Pipe from the Republic of Korea; 2015–2016 ("Final IDM"), PR 314.[1]

---

[1] Citations to the administrative record reflect the public record ("PR") document numbers filed in this case, ECF No. 50.

Before the Court are the Final Results of Redetermination Pursuant to Court Remand ("Fourth Remand Results"), ECF No. 116-1, ordered in Hyundai Steel Co. v. United States ("Hyundai Steel IV"), 46 CIT __, __, Slip Op. 22-67 at 25–26 (June 15, 2022). No party filed comments contesting Commerce's Fourth Remand Results. For the reasons discussed below, the Court sustains the Fourth Remand Results.

## BACKGROUND

The Court presumes familiarity with the facts and procedural history of this case and recites the facts relevant to the Court's review of the Fourth Remand Results. See Hyundai Steel IV, 46 CIT at __, Slip Op. 22-67 at 5–8; see also Hyundai Steel Co. v. United States ("Hyundai Steel I"), 43 CIT __, __, 415 F. Supp. 3d 1293, 1295–1301 (2019); Hyundai Steel Co. v. United States ("Hyundai Steel II"), 44 CIT __, __, 483 F. Supp. 3d 1273, 1275–76 (2020); Hyundai Steel Co. v. United States ("Hyundai Steel III"), 45 CIT __, __, 531 F. Supp. 3d 1344, 1347–48 (2021).

In the Final Results, Commerce determined that a particular market situation in Korea distorted the cost of production of CWP. Final IDM at 3. Commerce also determined that it could quantify the amount of the distortion, and it made an upward adjustment to the cost of production of CWP based on the subsidy rate of hot-rolled steel coil. Id. (citing Countervailing Duty Investigation of Certain Hot-

Rolled Steel Flat Products from the Republic of Korea, 81 Fed. Reg. 53,439 (Dep't of Commerce Aug. 12, 2016) (final affirmative determination), as amended, Certain Hot-Rolled Steel Flat Products from Brazil and the Republic of Korea, 81 Fed. Reg. 67,960 (Dep't of Commerce Oct. 3, 2016) (amended final affirmative countervailing duty determinations and countervailing duty orders)).  Commerce then conducted a sales-below-cost test and disregarded certain sales made at prices below the cost of production, as adjusted.  See Decision Mem. for the Prelim. Results of Antidumping Duty Admin. Review: Circular Welded Non-Alloy Steel Pipe from the Republic of Korea: 2015–2016 ("Prelim. DM") at 19–20, PR 275; Final IDM at 3 (noting that Commerce used the same calculation methodology for the respondents not selected for individual examination for the Final Results as explained in the Prelim. DM).  Commerce calculated normal value from the remaining above-cost home market sales for mandatory respondents Hyundai Steel and Husteel.  Prelim. DM at 20; Final IDM at 3.

In Hyundai Steel I, 43 CIT at __, 415 F. Supp. 3d at 1301, the Court concluded that Commerce's particular market situation determination was unsupported by substantial evidence.  In the Final Results of Redetermination Pursuant to Remand ("Remand Results"), ECF No. 73-1, subsequent to Hyundai Steel I, Commerce conducted a new review of the record and again determined that a particular market situation distorted the cost of hot-rolled steel coil in the Korean

market.  Remand Results at 4.  Commerce again made an upward adjustment to the cost of hot-rolled steel coil, performed the sales-below-cost test, and calculated normal value from the remaining above-cost home market sales.  See id.

In Hyundai Steel II, 44 CIT at __, 483 F. Supp. 3d at 1279, 1281, the Court remanded for Commerce to explain the statutory authority to conduct a cost-based particular market situation analysis when normal value is based on home market sales and to adjust the cost of production for purposes of the sales-below-cost test of 19 U.S.C. § 1677b(b), specifically within the context of relevant caselaw from the U.S. Court of International Trade.  Commerce's second remand results explained its view that Section 504 of the Trade Preferences Extension Act of 2015 ("TPEA"), Pub. L. No. 114-27, § 504, 129 Stat. 362, 385, authorizes it to make such determinations and to adjust the cost of production for the sales-below-cost test when calculating normal value based on home market sales.  Final Results of Redetermination Pursuant Court Remand ("Second Remand Results") at 3–4, ECF No. 85-1.

In Hyundai Steel III, 45 CIT at __, 531 F. Supp. 3d at 1353, the Court concluded that Commerce's cost-based particular market situation determination and subsequent adjustment were not in accordance with the law.  The Court held that when normal value is based on home market sales, 19 U.S.C. § 1677b does not permit Commerce to make a particular market situation adjustment to the costs of

production for purposes of the sales-below-cost test of 19 U.S.C. § 1677b(b).  Id. Under protest, Commerce eliminated the particular market situation adjustment in its recalculation of the weighted-average dumping margin of Hyundai Steel.  See Final Results of Redetermination Pursuant to Court Remand ("Third Remand Results") at 6, ECF No. 94-1; see also 19 C.F.R. § 351.405.  Commerce recalculated the dumping margin rate for SeAH by recalculating the rate for the second mandatory respondent, Husteel, using a particular market situation adjustment for Husteel and then relying on a simple average of the recalculated rates for Hyundai Steel and Husteel.  Third Remand Results at 6–7.

In Hyundai Steel IV, 46 CIT at __, Slip Op. 22-67 at 25–26, the Court sustained Commerce's calculation of Hyundai Steel's dumping margin rate without a particular market situation adjustment, but remanded Commerce's calculation of SeAH's dumping margin based on a particular market situation determination that was unsupported by substantial evidence.

In the remand redetermination under protest, Commerce recalculated the dumping margin for SeAH with no adjustment for a particular market situation in Korea.  Fourth Remand Results at 7.  Commerce recalculated the average of Husteel's recalculated rate and mandatory respondent Hyundai Steel's rate, which was applied as a new rate to SeAH.  Id. at 7–8.  SeAH's rate of 19.28 percent from the Final Results was changed to a new rate of 9.77 percent in the Fourth Remand

Results.  Id. at 8.

## JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction pursuant to Section 516A(a)(2)(B)(i) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(i), and 28 U.S.C. § 1581(c). The Court will hold unlawful any determination found to be unsupported by substantial evidence on the record or otherwise not in accordance with the law.  19 U.S.C. § 1516a(b)(1)(B)(i).  The Court also reviews determinations made on remand for compliance with the Court's remand order.  Ad Hoc Shrimp Trade Action Comm. v. United States, 38 CIT __, __, 992 F. Supp. 2d 1285, 1290 (2014), aff'd, 802 F.3d 1339 (Fed. Cir. 2015).

## DISCUSSION

SeAH filed a Motion to Amend Scheduling Order ("Motion to Amend"), ECF No. 117, requesting that the Court issue an expedited amended scheduling order.  SeAH explained that because "there were no objections to the draft remand redetermination and there were no changes between the draft and final version of the redetermination on fourth remand, SeAH believes that no further briefing before the Court is necessary."  Motion to Amend at 2.  Defendant United States and Defendant-Intervenor Wheatland Tube Company consented to the Motion to Amend, and Hyundai Steel did not oppose.  Id.  The Court granted the Motion to Amend.  Am. Scheduling Order, ECF No. 118.  No parties filed comments with the

Court on Commerce's Fourth Remand Results.

In the Fourth Remand Results, Commerce stated that it recalculated the weighted-average dumping margin of Husteel without an adjustment to account for a particular market situation in Korea, for the purpose of recalculating SeAH's rate. Fourth Remand Results at 7. Commerce then calculated the average of Husteel's recalculated rate and the other mandatory respondent Hyundai Steel's rate and applied the new rate to SeAH as a non-examined company. Id. at 7–8. Commerce changed the weighted-average dumping margin for SeAH from the prior Final Results rate of 19.28 percent to the recalculated Fourth Remand Results rate of 9.77 percent. Id. at 8.

Commerce's recalculation of SeAH's dumping margin without a particular market situation adjustment is consistent with the Court's prior opinions and orders in Hyundai Steel I, Hyundai Steel II, Hyundai Steel III, and Hyundai Steel IV.

## CONCLUSION

The Court sustains the Fourth Remand Results.

Judgment will be entered accordingly.

      /s/ Jennifer Choe-Groves
    Jennifer Choe-Groves, Judge

Dated:    August 24, 2022
      New York, New York